Kevin ROSS and Jane Ross, Appellants–Respondents,

v.

DELAWARE COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee–Petitioner.

No. 18A02–9505–JV–293.

Court of Appeals of Indiana.

March 5, 1996.

Alan K. Wilson, Muncie, for Kevin Ross.

Steven C. Brown, Muncie, for Jane Ross.

Jon L. Orlosky, Muncie, for appellee.

**OPINION**

KIRSCH, Judge.

Kevin Ross and Jane Ross (now Jordan) appeal the termination of their parental rights over their four children. They raise one issue for review which we restate as:

Whether the psychologist-patient privilege applies in a proceeding to terminate parental rights.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On August 16, 1991, the Delaware County Department of Public Welfare (Department) filed a petition alleging that the parents' four children were children in need of services (CHINS).[1] The Department alleged that when found alone in their home by the police, the children and their clothes were extremely dirty, the home was unsanitary, there was no food, and the youngest child had a severe burn on his back and a knot on his forehead. On October 13, 1991, the parents admitted to the Department's allegations and the trial

1. *See* IC 31–6–4–3(a).

court entered an order adjudicating the children as CHINS.

Immediately following the CHINS determination, the court held a dispositional hearing and entered an order. As part of the plan for the treatment and rehabilitation of the children, the court ordered the parents to submit to psychological evaluations. On November 6, 1992, the Department filed petitions for the involuntary termination of the parent/child relationship for all four of the Ross's children.

During the termination hearing, the court heard testimony from Dr. Scott Strader, the psychologist who interviewed and evaluated Kevin Ross. Dr. Strader administered several tests: the Weschler Adult Intelligence Test (Weschler), the Rorschach Ink Blot Test (Rorschach), and the Mallion Clinical Axel Inventory Test (Mallion). The Weschler test results revealed that Kevin had an IQ of seventy-one, which signifies borderline intellectual functioning.[2] Based on the Rorschach test, Dr. Strader determined that Kevin had low self-esteem and self-confidence. Based on the Mallion test, Dr. Strader found that Kevin had trouble expressing his emotions, was impulsive, and was prone to depression.

After conducting the tests, Dr. Strader concluded that Kevin could function under routine circumstances such as going to work everyday. Dr. Strader further concluded, however, that Kevin would experience great difficulty when faced with something other than a routine activity, i.e., raising children and maintaining a stable relationship.

The court also heard testimony from Dr. Stanley Wenck, the psychologist who examined Jane. Dr. Wenck also administered several tests: the Weschler test, an achievement test, several personality tests including the Minnesota Multiphasic Personality Inventory, and the Rotter Incomplete Sentence Blank Test. Based on those examinations, Dr. Wenck found that Jane had an IQ of seventy-six, was mildly mentally handicapped, suffered from depression, and was genetically at risk for substance abuse. Dr. Wenck concluded that termination of her parental rights be considered, given her low IQ and personality weaknesses.

On February 22, 1995, the court terminated Kevin and Jane's parental rights. This appeal followed.

## DISCUSSION AND DECISION

Kevin and Jane assert the trial court erred in admitting the testimony of the psychologists, Dr. Strader and Dr. Wenck, in the termination hearings. They claim any information or test results from their meetings with the psychologists were privileged. We disagree.

In *Shaw v. Shelby County Dep't of Pub. Welfare*, 612 N.E.2d 557, 558 (Ind.1993), our supreme court held that the physician-patient privilege is unavailable in a proceeding to terminate parental rights. Shaw contested the admission of testimony from a physician who examined her on the basis of IC 34-1-14-5 which provides, "Except as otherwise provided by statute, the following persons shall not be competent witnesses ... Physicians, as to matters communicated to them, as such, by patients, in the course of their professional business, and as to advice given in such cases." Shaw further contested the applicability of IC 31-6-7-13(d), which stated, "Neither the physician-patient privilege nor the husband-wife privilege is grounds for excluding evidence in any proceeding in which the child is alleged to be a child in need of services." Shaw argued that because CHINS cases were separate from termination hearings, IC 31-6-7-13(d) should not apply to the latter.

Our supreme court reasoned that although termination hearings are separate from CHINS proceedings, termination hearings adopted the same procedures as the CHINS proceedings. *Shaw*, 612 N.E.2d at 558; *see also* IC 31-6-5-1. Therefore, the court determined that the legislative intent was to

**2.** Dr. Strader testified that an average IQ was 100, with the ranges usually between 80 and 120.

remove the physician-patient privilege from termination proceedings as well as CHINS cases. *Shaw*, 612 N.E.2d at 558.

Recently, this court in *Stone v. Daviess County Div. of Children and Family Serv.*, 656 N.E.2d 824, 831 (Ind.Ct.App.1995), followed *Shaw* and held that the social worker-patient privilege set forth in IC 25–23.6–6–1 did not apply in termination proceedings. We held the social worker-patient privilege to be abrogated by law on the basis of IC 25–23.6–6–1(8),[3] IC 31–6–5–1, IC 31–6–7–13(d), and *Shaw*. Although *Shaw* dealt with physicians, we determined that an extension to include social workers was warranted, stating, "It is inconceivable that our legislature intended to abrogate the physician-patient privilege in termination proceedings but did not also intend to abrogate the social worker-patient privilege in termination proceedings." *Stone*, 656 N.E.2d at 831.

Here, Kevin and Jane, like the appellants in the previous cases, assert that any information arising from their meetings with Dr. Strader and Dr. Wenck are protected under the psychologist-patient privilege in IC 25–33–1–17. However, like the privilege in *Stone*, a statutory exception also exists for the psychologist-patient privilege when abrogated under Indiana law. *See* IC 25–33–1–17(6).

Applying *Shaw* and *Stone* to the present case, we come to the same conclusion: the psychologist-patient privilege is abrogated under Indiana law. and, therefore, is not available in termination proceedings. Our holding is a logical extension of *Shaw*, which abolished the physician-patient privilege in termination proceedings, and *Stone*, which extended the rule of *Shaw* to abolish the privilege between social workers and clients. We find no reason why the psychologist-patient privilege should be afforded any more protection than the privileges found to be abrogated in *Shaw* and *Stone*. *See Stone*, 656 N.E.2d at 831. Thus, the trial court did not err in admitting testimony from the psy-

chologists in Kevin and Jane's termination hearings.

Affirmed.

SULLIVAN and HOFFMAN, JJ., concur.

---

**3.** IC 25–23.6–6–1(8) provides an exception to the social worker-patient privilege in cases where

such privilege was "abrogated under Indiana law."