**In the Matter of K.F. and R.F.**

**Carl Fornash and Megan Fornash, Appellants,**

v.

**LaPorte County Office of Family and Children, Appellee.**

No. 46A05–0305–JV–210.

Court of Appeals of Indiana.

Oct. 15, 2003.

Donald W. Pagos, Michigan City, IN, Attorney for Appellants.

Alan J. Sirinek, Friedman & Associates, P.C., LaPorte, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellants, Carl and Megan Fornash, challenge the trial court's permanency plan order finding that termination of the Fornashes' parental rights to their two minor children, K.F. and R.F., was in the children's best interests. Upon appeal, the Fornashes present one issue for our review: "[w]hether proceedings to terminate parental rights are appropriate merely because the parents have learning difficulties and are being treated for mental illness."

Appellant's Brief at 1. We, however, *sua sponte* raise one dispositive issue: whether the trial court's order on the permanency plan is an appealable final judgment. Concluding that it is not, we dismiss.

The record reveals that K.F. was born on August 3, 2000, and R.F. was born on July 6, 2001. Both of the Fornashes have learning disabilities. With an I.Q. of 65, Carl is mildly mentally retarded. His reading, spelling, and arithmetic abilities are at a first-grade level. Carl has been diagnosed with bipolar disorder and takes psychotropic medication under the care of a physician. Megan was born with fetal alcohol syndrome and cocaine addiction and has an I.Q. of 72. Megan was hospitalized for mental problems at the age of fourteen. She has a sixth-grade reading level, a fourth-grade spelling level, and a third-grade arithmetic level. Her level of intellectual functioning is "[b]orderline."

On October 8, 2001, the LaPorte County Office of Family and Children ("OFC") filed with the trial court a request to take custody of K.F. and R.F. and seeking permission to file a petition that K.F. and R.F. were children in need of services ("CHINS"), which the trial court granted on October 12, 2001. *See* I.C. §§ 31–34–2–1, 31–34–9–1 (Burns Code Ed. Repl.1997). On that date, the OFC filed a CHINS petition which alleged that K.F. and R.F. were in need of services as defined by I.C. § 31–34–1–1 (Burns Code Ed. Repl.1997). The statute provides that a child is in need of services if the child is under eighteen years old and:

"(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent ... to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that the child:

    (A) is not receiving; and

    (B) is unlikely to be provided or accepted without the coercive intervention of the court." *Id.*

Specifically, the petition alleged that R.F. was diagnosed with "failure to thrive" caused by the Fornashes' inability or refusal to provide R.F. with proper nutrition and a clean and healthy home environment. R.F. allegedly refused to consume nutrients and lost weight while in her parents' custody. As a result of this, R.F. was hospitalized on two occasions, and while hospitalized, would eat and gain weight. The petition further alleged that the unsanitary home environment contributed to R.F.'s failure to thrive and a respiratory illness suffered by K.F. An amended CHINS petition, filed on February 25, 2002, alleged that K.F. has been diagnosed with a "failure to thrive," caused by lack of nutrition, and that neither child had received proper immunization.

At an initial hearing held on May 15, 2002, the Fornashes admitted to the allegations contained in the amended CHINS petition. At that time, the trial court further found that it was in the children's best interests to remain in foster care and set the matter for a dispositional hearing on July 11, 2002. The dispositional order was issued on July 30, 2002. This order adopted an agreement reached by the parties calling for reunification of the Fornash family, providing services to Carl and Megan, and continuing foster care of K.F. and R.F.

On January 27, 2003, the OFC filed a permanency report, and on January 30, and February 4, 2003, permanency hearings were held. The permanency plan filed with the trial court recommended that the children remain in foster care and that the OFC initiate proceedings to terminate the Fornashes' parental rights. The trial court entered an order on February 19, 2003, wherein the trial court found that it was in the children's best interests that the OFC "proceed with termination of parental rights." Appendix at 12. It is from this order that the Fornashes now seek to appeal.

The Fornashes form their argument as if the trial court terminated their parental rights, relying upon case law involving termination of parental rights. *See, e.g., Stone v. Daviess County Div. of Children and Family Servs.*, 656 N.E.2d 824 (Ind. Ct.App.1995) (appeal from order terminating parental rights), *trans. denied.* Here, the State notes, and we find significant, that the Fornashes' parental rights were not terminated by the order being appealed. The question then becomes, may the Fornashes appeal from the trial court's permanency plan order?

After a child has been determined to be in need of services by the trial court, a dispositional hearing is required, after which the trial court may choose among several dispositional options. Specifically, the trial court may enter one or more of the following dispositional decrees:

"(1) Order supervision of the child by the probation department or the county office of family and children.

(2) Order the child to receive outpatient treatment:

    (A) at a social service agency or a psychological, a psychiatric, a medical, or an educational facility; or

    (B) from an individual practitioner.

(3) Remove the child from the child's home and place the child in another home or shelter care facility. Placement under this subdivision includes authorization to control and discipline the child.

(4) Award wardship to a person or shelter care facility. Wardship under this

subdivision does not include the right to consent to the child's adoption.

(5) Partially or completely emancipate the child under section 6 of this chapter.

(6) Order:

(A) the child; or

(B) the child's parent, guardian, or custodian; to receive family services.

(7) Order a person who is a party to refrain from direct or indirect contact with the child." I.C. § 31–34–20–1 (Burns Code Ed. Repl.1997).

In 1998, our General Assembly re-wrote I.C. § 31–34–21–7 (Burns Code Ed. Supp. 2003), to require the trial court to hold a permanency hearing:

"(1) not more than thirty (30) days after a court finds that reasonable efforts to reunify or preserve a child's family are not required as described in section 5.6 of this chapter;

(2) every twelve (12) months after:

(A) the date of the original dispositional decree; or

(B) a child in need of services was removed from the child's parent, guardian, or custodian;

whichever comes first." I.C. § 31–34–21–7(a).

One of the things the trial court is required to do at the permanency hearing is consider and approve a permanency plan for the child in compliance with I.C. § 31–34–21–7.5 (Burns Code Ed. Supp.2003).[1] Section 7.5 describes the required permanency plan:

"A permanency plan under this chapter includes the following:

(1) The intended permanent or long term arrangements for care and custody of the child that may include any of the following arrangements that the court considers most appropriate and consistent with the best interests of the child:

(A) Return to or continuation of existing custodial care within the home of the child's parent, guardian, or custodian or placement of the child with the child's noncustodial parent.

(B) *Initiation of a proceeding by the agency or appropriate person for termination of the parent-child relationship under IC 31–35.*

(C) Placement of the child for adoption.

(D) Placement of the child with a responsible person, including:

(i) an adult sibling;

(ii) a grandparent;

(iii) an aunt;

(iv) an uncle; or

(v) other relative;

who is able and willing to act as the child's permanent custodian and carry out the responsibilities required by the permanency plan.

(E) Appointment of a legal guardian. The legal guardian appointed under this section is a caretaker in a judicially created relationship between the child and caretaker that is intended to be permanent and self-sustaining as evidenced by the transfer to the caretaker of the following parental rights with respect to the child:

(i) Care, custody, and control of the child.

(ii) Decision making concerning the child's upbringing.

(F) Placement of the child in another planned, permanent living arrangement.

---

1. Prior to the 1998 amendment, Section 7 referred to a "formal hearing" rather than a "permanency hearing" and did not contain any provision for a permanency plan to be filed by the OFC.

(2) A time schedule for implementing the applicable provisions of the permanency plan.

(3) Provisions for temporary or interim arrangements for care and custody of the child, pending completion of implementation of the permanency plan.

(4) Other items required to be included in a case plan under IC 31–34–15 or federal law, consistent with the permanent or long term arrangements described by the permanency plan." (emphasis supplied).

Thus, the trial court must approve a permanency plan which calls for one of six alternative plans for long term or permanent placement of the child.

In the present case, the trial court held a permanency hearing and approved a permanency plan pursuant to I.C. § 31–34–21–7.5(1)(B) calling for the OFC to begin the process of terminating the Fornashes' parental rights under I.C. 31–35. However, the permanency plan approved by the trial court does not itself terminate parental rights. Although termination hearings are governed by the same procedures as CHINS proceedings, they are separate from CHINS proceedings. I.C. § 31–35–2–2 (Burns Code Ed. Repl.1997); *Shaw v. Shelby County Dep't of Pub. Welfare,* 612 N.E.2d 557, 558 (Ind.1993); *State ex rel. Gosnell v. Cass Circuit Court,* 577 N.E.2d 957, 958 (Ind.1991); *Ross v. Delaware County Dep't of Pub. Welfare,* 661 N.E.2d 1269, 1270 (Ind.Ct.App.1996), *trans. denied.* Instead of waiting until the termination process was completed or had even begun, the Fornashes seek to appeal from the permanency plan approved by the trial court. As stated, the question we address is whether such a permanency plan is appealable.

Our jurisdiction is defined by Indiana Appellate Rule 5, which states that we have jurisdiction in appeals from final judgments, interlocutory orders, and agency decisions. The trial court's permanency plan order is not an agency decision, nor is there any indication that the appellants have proceeded under Appellate Rule 14 governing interlocutory appeals. The relevant issue then is whether the permanency plan order is a "final judgment." Indiana Appellate Rule 2(H) defines when an order is a "final judgment":

"A judgment is a final judgment if:

(1) it disposes of all claims as to all parties;

(2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;

(3) it is deemed final under Trial Rule 60(C);

(4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or

(5) it is otherwise deemed final by law."

Here, subsections (2), (3), and (4) are inapplicable. Nor are we aware of any rule of law which deems permanency plans final under subsection (5). The relevant subsection is Rule 2(H)(1), and the question is whether the permanency plan disposes of all claims as to all parties. *See also In re M.R.,* 452 N.E.2d 1085 (Ind.Ct.App.1983) (stating that judicial economy prohibits the appeal of trial court action until it is finally and completely at an end).

The trial court's permanency plan is final in the sense that it calls for the initiation of proceedings to terminate parental rights, which would bring an end to the CHINS phase of the case and require the filing of a new cause of action to initiate

the termination proceedings. *See Gosnell,* 577 N.E.2d at 958 (Ind.1991); *Ross,* 661 N.E.2d at 1270. However, the permanency plan order is not final in the sense that it does not dispose of the essential issue which the Fornashes challenge upon appeal, i.e. the propriety of terminating their parental rights. In other words, the Fornashes have not yet been adversely affected by the permanency plan with regard to the issue which they present upon appeal.

The only way in which the permanency plan affects the Fornashes is that it approves the initiation of proceedings which *could* result in the termination of their parental rights. Such proceedings will not prejudice the Fornashes unless and until termination occurs. Congress has passed legislation seeking to ensure that children do not spend long periods of their childhood in foster care or other temporary settings. *Phelps v. Sybinsky,* 736 N.E.2d 809, 813 (Ind.Ct.App.2000), *trans. denied;* 42 U.S.C. § 675. Federal law requires the OFC to file a petition to terminate parental rights whenever a child has been removed from the parents and under the supervision of the OFC for fifteen of the most recent twenty-two months unless such filing is not in the best interests of the child.[2] *See Phelps,* 736 N.E.2d at 813–14; I.C. § 31–35–2–4.5 (Burns Code Ed. Supp.2003); 42 U.S.C. § 675(5)(E).

The bottom line is that the Fornashes challenge the propriety of terminating their parental rights when, at the time of the order from which they appeal, their rights have not been terminated. The challenge is premature. In this sense, it would be similar to a party appealing from the opinion of the medical review board in a medical malpractice case, even though the board's opinion is not conclusive. *See* I.C. § 34–18–10–23 (Burns Code Ed. Repl. 1998); *Mayhue v. Sparkman,* 653 N.E.2d 1384, 1386 (Ind.1995). Here, the permanency plan is not conclusive as to the issue presented upon appeal—whether termination of the Fornashes' parental rights is proper.

Moreover, the Fornashes are not prejudiced by the permanency plan. In the actual termination proceedings, the Fornashes may challenge the propriety of terminating their parental rights and hold the OFC to the stricter burden of proof required in such cases. *Compare* I.C. § 31–34–12–2 (Burns Code Ed. Supp.2003) (findings in a proceeding to terminate parental rights must be based upon clear and convincing evidence) *with* I.C. § 31–34–12–3 (Burns Code Ed. Repl.1997) (findings in proceedings other than those for juvenile delinquency or termination of parental rights must be based upon a preponderance of the evidence).

For the foregoing reasons, we conclude that the permanency plan order from which the Fornashes seek to appeal is not an appealable final judgment. *See In re M.R.,* 452 N.E.2d at 1089 (holding that CHINS finding was not an appealable final order because only after dispositional decree were the rights of the parties finally determined). We therefore have no jurisdiction over this matter.

The appeal is dismissed.

FRIEDLANDER and RILEY, JJ., concur.

2. Under Indiana law the OFC is required to file a motion to dismiss a petition to terminate parental rights if the current case plan prepared by or under the supervision of the OFC documents a compelling reason for concluding that filing, or proceeding to a final determination of, a petition to terminate the parent-child relationship is not in the best interests of the child. I.C. § 31–35–2–4.5(d)(1).