**William SLATER, Appellant,**

v.

**MARION COUNTY DEPARTMENT OF CHILD SERVICES and Child Advocates, Inc., Appellees.**

No. 49A04–0610–JV–597.

Court of Appeals of Indiana.

May 9, 2007.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Kimberly Spindler, Marion County Department of Child Services, Indianapolis, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

William Slater ("Father") appeals from the trial court's determination that Z.S., his minor son, is a child in need of services ("CHINS"). Father raises two issues for our review, namely:

1. Whether the trial court erred when it determined Z.S. to be a CHINS.

2. Whether the trial court erred when it did not give Father notice of the dispositional order in open court or proceed to disposition.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Father and Leslie C. Slater ("Mother") have two minor children: K.S., born April 15, 1994, and Z.S., born July 12, 2003. On February 2, 2006, the Marion County Office of Family and Children ("the OFC") received a report that Father had molested K.S. Family Case Manager Ranaye Miles investigated the report. Miles interviewed K.S., who stated that Father had "French kiss[ed]" her and had "rubbed her breast and buttock areas over and under her clothing[;]" that Father never wears clothes around the house unless they have company; that Father had asked K.S. to lick and touch his penis on several occasions; that she "believe[d] that she had touched his penis once when he took her hands and put it [sic] down his pants, while they were lying in bed[;]" and that she had seen Father "mess with his penis until 'white stuff' come [sic] from it." Appellant's App. at 43. K.S. also stated that she had seen Father touching two of her female cousins inappropriately.[1] K.S. stated

---

1. One of K.S.'s twelve-year-old relatives later told Miles that Father had touched her under her clothing on her vagina and breast.

that she had not reported the abuse to Mother.

Miles also interviewed Mother, who stated that she was unaware of any abuse. Mother stated further that she was unsure whom to believe regarding the allegations and unsure what she would do if K.S.'s report were true. On February 3, 2006, Miles made an unannounced visit to the Slater residence. Mother stated that she had not seen Father since the previous evening and that she did not know his whereabouts or when he would return.

On February 6, 2006, the OFC filed a petition alleging K.S. and Z.S. to be CHINS. The petition alleged, in relevant part:

> 5. [K.S. and Z.S.] are Children In Need of Services as defined in [Indiana Code] 31–34–1 in that: one or more of the children's physical or mental condition [sic] is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of a parent, guardian or custodian to supply one or more of the children with necessary food, clothing, shelter, medical care, education or supervision; one or more of the children is a victim of a sex offense under Indiana Code Section 35–42–4–1, 35–42–4–2, 35–42–4–3, 35–42–4–4, 35–42–4–7, 35–42–4–9, –35–45–4–1, 35–45–4–2, or 35–46–1–3; the child lives in the same household as a child who is a victim of a sex offense under the aforementioned statute(s); and the children need care, treatment or rehabilitation that the children are not receiving and are unlikely to be provided or accepted without the coercive intervention of the Court, as shown by the following, to wit:
>
> A) On or about February 3, 2006, the Department of Child Services (DCS) determined, by its Family [Case Man-ager] (FCM) Ranaye Miles, the children to be children in need of services because their mother, Leslie Slater, failed to protect [K.S.] from being sexually abused by her father, William Slater[;] has expressed that she [did not believe the] allegations. The child disclosed that the molest consisted of fondling and other inappropriate touching and has occurred on numerous occasions. In addition, the child has witnessed Mr. Slater inappropriately touching other young females. When questioned regarding the allegations, Ms. Slater expressed that she is unsure of the veracity of the allegations. Mr. and Ms. Slater still reside in the same home. At this time, the children are endangered in the care of their parents and the family is in need of rehabilitative services.

*Id.* at 39.

On June 9, 2006, the trial court held a factfinding hearing, and on September 8, 2006, the trial court held a dispositional hearing.[2] At the conclusion of the factfinding hearing, the trial court adjudicated K.S. and Z.S. each to be a CHINS. At the dispositional hearing, Father, by counsel, objected to items 15 and 21 in the predispositional report regarding a substance abuse assessment and reimbursement to the OFC. However, at the hearing's conclusion, the trial court entered a dispositional order adopting the OFC's predispositional report in full and incorporating the same as the findings of the court. In particular, the court "order[ed K.S. and Z.S.] to be wards of the Marion County Office of Family and Children" and for K.S. to be in foster care and Z.S. to be in relative care. *Id.* at 5. The court also incorporated into the dispositional order a

---

2. Father was present and represented by counsel at both hearings. The dispositional hearing was continued to September 8 as to Father because he was unable to attend on the date originally scheduled, August 1, 2006.

parental participation plan. Father now appeals.

## DISCUSSION AND DECISION

### Issue One: CHINS Adjudication of Z.S.

 Father first contends that the trial court erred when it adjudicated Z.S. to be a CHINS. In essence, Father argues that the evidence is insufficient to support the CHINS adjudication. When reviewing the sufficiency of evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Hallberg v. Hendricks County Office of Family & Children,* 662 N.E.2d 639, 646 (Ind.Ct.App. 1996). We will not reweigh the evidence or judge the credibility of witnesses. *Id.* Here, the record supports the trial court's determination that Z.S. is a CHINS.

Father alleges that the OFC has not met the statutory requirements to show that Z.S. is a CHINS under Indiana Code Section 31–34–1–3(b). That statute sets out the elements that must be shown for a sibling of a child sex offense victim to be adjudicated a CHINS, and it provides:

A child is a child in need of services if, before the child becomes eighteen (18) years of age:

(1) The child lives in the same household as another child who is the victim of a sex offense under:

(A) IC 35–42–4–1;

(B) IC 35–42–4–2;

(C) IC 35–42–4–3;

(D) IC 35–42–4–4;

(E) IC 35–42–4–7;

(F) IC 35–42–4–9;

(G) IC 35–45–4–1;

(H) IC 35–45–4–2;

(I) IC 35–46–1–3; or

(J) the law of another jurisdiction, including a military court, that is substantially equivalent to any of the offenses listed in clauses (A) through (I);

(2) the child lives in the same household as the adult who committed the sex offense under subdivision (1) and the sex offense resulted in a conviction or a judgment under IC 31–34–11–2[, adjudicating CHINS status after a fact[ ]finding hearing];

(3) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court; and

(4) a caseworker assigned to provide services to the child:

(A) places the child in a program of informal adjustment or other family or rehabilitative services based upon the existence of the circumstances described in subdivisions (1) and (2) and the assigned caseworker determines further intervention is necessary; or

(B) determines that a program of informal adjustment or other family or rehabilitative services is inappropriate.

Ind.Code § 31–34–1–3(b). Father contends that Z.S. should not have been adjudicated to be a CHINS because (1) Father has not been convicted of any of the sex offenses listed in the statute, (2) the trial court adjudicated both children to be CHINS in the same proceeding but, under Indiana Code Section 31–34–1–3(b), "[Z.S.] cannot be made a CHINS until after [K.S.] has been adjudicated a CHINS[,]" and (3) the OFC failed to show that "the caseworker placed [Z.S.] into a period of formal adjustment [sic] and the caseworker subsequently decided further intervention was necessary or the caseworker determined a program of informal adjustment is not appropriate." Appellant's Brief at 7.

■ Father first contends Z.S. should not have been adjudicated to be a CHINS because the OFC failed to show either that Father was convicted of a sex offense against K.S. or that the sex offense resulted in a judgment under Indiana Code Section 31–34–11–2. Indiana Code Section 31–34–1–3(b)(2) requires the OFC to show that a sex offense perpetrated by Father resulted in *either* a conviction *or* the entry of a judgment after a CHINS factfinding hearing. The OFC concedes that Father has not been convicted of a sex offense. However, at the conclusion of the factfinding hearing, the trial court entered judgment determining Z.S. to be a CHINS based on the allegations of sexual abuse against K.S. Thus, the OFC met the requirement in Section 31–34–1–3(b)(2) by showing that the sex offense resulted in an adjudication that Z.S. is a CHINS, entered after a factfinding hearing as provided under Indiana Code Section 31–34–11–2.

■ Father also contends that, under Indiana Code Section 31–34–1–3(b)(2), "[Z.S.] can not [sic] be made a CHINS until after [K.S.] has been adjudicated a CHINS." Appellant's Brief at 7. But Father does not support that contention with meaningful argument or citations to authority. Therefore, he has waived this issue for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, we address the merits of Father's claim.

■ Whether Indiana Code Section 31–34–1–3(b)(2) requires a child sex offense victim to be adjudicated to be a CHINS before the victim's sibling can be adjudicated to be a CHINS based on that sex offense is a matter of first impression, requiring us to construe that statute. In construing a statute our main objective is to determine, give effect, and implement the intent of the legislature. *Neal v. DeKalb County Division of Family & Children (In re Termination of Parent–Child Relationship of M.N. and H.N.),* 796 N.E.2d 280, 284 (Ind.2003). Courts do not interpret a statute which is clear and unambiguous on its face. *P.B. v. T.D,* 561 N.E.2d 749, 750 (Ind.1990) (citation omitted). Where a statute is susceptible to more than one interpretation, however, the court may consider the consequences of a particular construction. *Id.* The court's objective in statutory construction is to determine and effect the intent of the legislature. *Id.* Also, an appellate court must construe a statute according to its plain meaning. *Wayne Township of Allen County v. Hunnicutt,* 549 N.E.2d 1051, 1054 (Ind.Ct.App.1990). Words and phrases shall be taken in their plain, ordinary and usual sense unless a different purpose is manifested by the statute itself. *Id.* This is the cardinal rule of statutory construction. *See* Ind.Code § 1–1–4–1 ("Words and phrases shall be taken in their plain, or ordinary and usual sense.")

Here, Father argues that Indiana Code Section 31–34–1–3(b)(2) requires the sex offense victim to be adjudicated to be a CHINS in a separate proceeding *before* the victim's sibling can be adjudicated to be a CHINS. But Father's interpretation does not find support on the face of the statute. Indiana Code Section 31–34–1–3(b)(2) contains no terms dictating the timing of the CHINS determinations of the sex offense victim and the victim's sibling. Instead, it merely requires the entry of a judgment determining the sibling to be a CHINS after a factfinding hearing. Moreover, Father's construction of Section 31–34–1–3(b)(2) would leave the sibling of a sex offense victim unprotected while the trial court determined the CHINS status of that victim. Such runs afoul of the purposes of the CHINS statutes, which include "ensur[ing] that children within the juvenile justice system are treated as persons in need of care, protection, treatment,

and rehabilitation[.]" Ind.Code § 31–10–2–1(5).

Indiana Code Section 31–34–1–3(b)(2) unambiguously provides that the sibling of a sex offense victim may be adjudicated to be a CHINS if the sex offense has resulted in a CHINS adjudication regarding the victim after a factfinding hearing. Under that statute, we conclude that the trial court must necessarily determine the victim to be a CHINS before it may adjudicate the sibling to be a CHINS, but the statute does not require separate proceedings. The statute is satisfied when the sex offense victim and the sibling are adjudicated CHINS in the same dispositional order. Such was the case here. Thus, Father's argument on this issue must fail.

Next, Father contends that the trial court should not have adjudicated Z.S. to be a CHINS because the OFC did not show that the caseworker placed Z.S. into a period of informal adjustment, later deciding that further intervention was necessary, or, alternatively, the caseworker determined a program of informal adjustment was not appropriate. We cannot agree.

In the Request for Filing of Petition and for Temporary Custody and/or Supervision, the OFC alleged that removal of the children from Father's home was necessary "to protect the children" and that "consideration for the safety of the children preclude[d] the use of family services to prevent removal of the child[.]" Appellant's App. at 36. Those allegations were supported in the preliminary inquiry and affidavit and in the CHINS petition, both of which alleged that K.S. has reported sexual abuse by Father, stating the specific acts set forth above in this decision, and that Mother did not know whether to believe the allegations. And in the CHINS petition, the OFC alleged that "[c]oncerns for the safety of the children precluded offering services to prevent removal." *Id.*

at 39. By requesting emergency custody of the children, the OFC had necessarily determined that a program of informal adjustment was not appropriate. Thus, the OFC made the necessary showing under Indiana Code Section 31–34–1–3(b)(4). Because the OFC met the requirements of Section 31–34–1–3(b)(4), we hold that the trial·court did not err when it determined Z.S. to be a CHINS.

### Issue Two: Dispositional Order

Father also maintains that the trial court erred because it did not give Father notice of the terms of the dispositional order. In particular, Father complains that the trial court did not explain or announce the terms of the dispositional order at the hearing or give Father a copy of that order. Father also contends that the dispositional order does not reflect what happened at the hearing.

Father first asserts that the trial court failed to give him notice of the terms of the dispositional order in open court. In support, Father argues that "[i]f the trial court never pronounces [the terms of a participation decree or other court order] or gives the parents [sic] a copy of the order, the parent is left *not* knowing these are court orders." Appellant's Brief at 10 (emphasis in original). Father's argument is not persuasive.

 First, Father maintains that the trial court should have announced or explained the terms of the dispositional order in open court. But Father has not cited to any authority to support his argument that the trial court is required to make such an announcement or give such an explanation. Therefore, he has waived this issue for appellate review. *See* Ind.App. R. 46(A)(8)(a).

Next, Father argues that the trial court did not give him a copy of the dispositional order. We note that the trial court incor-

porated into the dispositional order the OFC's predispositional report as the findings of the court and the parental participation decree. The distribution list at the conclusion of the dispositional order names Father's trial counsel, and Father does not contest that his attorney received a copy of the order. Thus, Father received a copy of the dispositional order. *See* Ind. Trial Rule 5(B) ("Whenever a party is represented by an attorney of record, service shall be made upon such attorney unless service upon the party himself is ordered by the court.").

Father also briefly alleges that "there are two pre-dispositional reports in the file, but it is not clear which report relates to which parent." Appellant's Brief at 9. However, after reviewing both predispositional reports and the transcript, we conclude that Father's argument is without merit. Although neither report is dated or lists Father as its subject, in one of the reports paragraph 15 recommends that Father participate in and complete a drug and alcohol assessment and paragraph 21 recommends that Father reimburse the OFC for expenses incurred for out-of-home placements and services for the children. At the hearing, Father, by counsel, objected to those recommendations by paragraph number and by the substance of each recommendation. The other predispositional report recommends drug and alcohol assessments for both parents in paragraph 15, but paragraph 21 refers to visitation with the children. Thus, Father clearly understood at the hearing which predispositional report applied to him.

Finally, Father contends that the dispositional order "does not properly reflect what happened in open court. After con-

tinuing the case so [Father] could be present for his own disposition, the trial court did not proceed to disposition in his presence." *Id.* Aside from the errors alleged above, Father does not explain how the trial court failed to proceed to disposition. And, as discussed above, we find no error in the trial court's pronouncement of the dispositional order or the notice of the order given to Father. Therefore, Father's argument is again without merit.[3]

Affirmed.

RILEY, J., and BARNES, J., concur.

---

**3.** We also note that, if the court had not proceeded to disposition, Father's appeal would not be properly before us. *See Fornash v. LaPorte Office of Family & Children,* 797 N.E.2d 310, 315 (Ind.Ct.App.2003) (entry of dispositional order is necessary to confer jurisdiction for appeal because only after entry of a dispositional order are the rights of the parties finally determined).