IN THE MATTER OF: S.L., A CHILD IN NEED OF SERVICES,
D.L. and K.L., Parents, Appellants/Respondents,
v.
TIPPECANOE COUNTY DEPARTMENT OF CHILD SERVICES, Appellee/Petitioner.
No. 79A02-0910-JV-1038.
Court of Appeals of Indiana.
January 29, 2010.
HAROLD E. AMSTUTZ, Lafayette, Indiana, ATTORNEY FOR APPELLANTS.
CRAIG JONES, Lafayette, Indiana, ATTORNEY FOR APPELLEE.

NOT FOR PUBLICATION

MEMORANDUM DECISION
CRONE, Judge.

Case Summary
D.L. ("Father") and K.L. ("Mother") appeal a juvenile court dispositional order declaring their child, S.L., to be a child in need of services ("CHINS"). We affirm.

Issues
Father and Mother raise the following issues on appeal:
I. Is the evidence sufficient to sustain the juvenile court's order declaring S.L. to be a CHINS?
II. Did the juvenile court err in granting the motion filed by the Department of Child Services ("DCS") to cease efforts to reunify S.L. with her parents?

Facts and Procedural History
The facts most favorable to the juvenile court's judgment indicate that on July 5, 2009, S.L. was born to Mother and Father. On July 7, 2009, DCS placed S.L. in protective custody, and the juvenile court held a detention hearing, at which Mother and Father entered a denial. On July 9, 2009, DCS filed a petition alleging S.L. to be a CHINS based on Mother's mental illness and both parents' history with DCS, as well as their history of substance abuse and criminal activity.
Mother and Father's older child, C.L., had been determined to be a CHINS in 2008, and their parental rights to C.L. had been terminated on May 12, 2009. One of Mother's other children, L.L., is also the subject of an ongoing CHINS proceeding and is in a permanent placement with his biological father, B.C.[1]
On July 15, 2009, the DCS filed a motion to cease reasonable efforts to reunify S.L. with Mother and Father. On August 13, 2009, the juvenile court held a contested factfinding hearing on both the CHINS petition and DCS's motion. On August 21, 2009, the juvenile court entered an order finding S.L. to be a CHINS and concluding that reasonable efforts to reunify were not required. The findings include the following:
1. Mother and Father were married in March 2007. Father was arrested and incarcerated in September 2007. Mother filed for divorce in October 2007 although she never pursued finalization of the divorce proceedings. There is a history of domestic violence between Mother and Father.
2. Mother and Father were involved in CHINS proceedings regarding the minor child's siblings, [C.L.] and [L.L.] .... A Detention Hearing was held in the first CHINS case on November 30, 2007 at which time [C.L.] and [L.L.] were placed in protective custody. DCS had received a report alleging that (a) Mother has a previous history with [Child Protective Services] regarding two (2) older children now in the care of their fathers with Mother having no contact for over a year, (b) Mother is not taking her prescribed medication, (c) Mother and Father have a long history of substance abuse, (d) Father is currently incarcerated having used crack and marijuana in the last month, (e) [C.L.] was taken by ambulance to the hospital and Mother failed to arrive for over 1.5 hours, (f) Mother drove [L.L.] to the hospital appearing unable to stay awake and possibly under the influence.
3. [C.L.] and [L.L.] were found to be [CHINS] on February 14, 2008, by admission of the parents.
4. Father was released from incarceration during the first CHINS case. Mother and Father were both offered extensive services to address the issues resulting in removal of the children. Mother's participation in services was minimal with very little progress. Mother was able to display some level of stability for short periods followed by periods of non-compliance. Mother never attended inpatient substance abuse treatment as ordered. After being released from incarceration around September 2008, Father began services.
5. On March 5, 2009, the Court determined the permanent plan for [C.L.] would be the initiation of a petition to terminate parental rights. The permanent plan for [L.L.] was determined to be reunification with his biological [f]ather, [B.C.].
6. Mother and Father entered admissions to petitions for Involuntary Termination of Parental Rights regarding [C.L.] .... Mother and Father's parental rights regarding [C.L.] were terminated on May 12, 2009. The first CHINS case regarding [L.L.] remains pending in which Mother's visitation with [L.L.] is fully supervised.
7. Father has an extensive criminal history, including numerous substance abuse offenses. Father was released from the Department of Correction in September 2008 and is currently on House Arrest through November 2011. Father attends Ivy Tech and works part-time. Father is out of the home about forty (40) hours per week during which time Mother would provide childcare. Father admits Mother struggles with mental health issues but does not agree that Mother requires counseling and medication to manage those issues. Father states that he is able to keep Mother stable and assist her with medication management.
8. Mother has a lengthy criminal history including several substance abuse offenses. During the first CHINS case, Mother was found in contempt and fled the courtroom when remanded to custody. Mother was subsequently arrested for Resisting Law Enforcement and is currently awaiting sentencing. Mother remains unemployed. Mother was diagnosed with bipolar as a teenager spending a year in the Larue Carter hospital. Mother admits a long history of periods of instability wherein she stops taking medications as prescribesd [sic] begins using drugs, and associates with inappropriate men. Mother reports last using illegal substances on November 1, 2008. At a family team meeting near the end of June 2009, Mother became distressed when asked to submit to a drug screen and left the meeting. Mother was pregnant at the time. Mother submitted to a hair drug screen the following date which was negative.
9. [S.L.] was born on July 5, 2009. DCS received a report alleging that Mother, who was currently involved in a CHINS proceeding, had given birth and may have been using drugs. It was further alleged that Mother was not taking medications as prescribed. DCS took protective custody of [S.L.] at the hospital on July 7, 2009. Upon investigation, it was determined that Mother received prenatal care during her pregnancy. Mother's urine drug screen was negative. [S.L.'s] meconium tested negative. Mother's subsequent drug screens have been negative. Father's subsequent drug screens have been negative.
10. Mother was evaluated at Raj Clinic on September 12, 2008 regarding bipolar disorder. Mother has been cooperative with medication treatment, consistent with appointments, and compliant with recommendations. Mother is prescribed medications which were ceased during pregnancy. Mother took immediate action to restart medications after birth. Mother began bi-weekly individual counseling in November 2008. Mother has been consistent with appointments and cooperative with recommendations. Mother completed a court-ordered substance abuse evaluation on June 9, 2009. Mother was referred to individual counseling during her pregnancy followed by intensive outpatient services after the birth. Mother attended counseling sessions prior to and immediately following the birth. Mother began intensive outpatient substance abuse treatment on July 20, 2009. Mother has actively participated and passed all random drug screens. Mother's individual counseling remains ongoing. Mother has initiated and is on a waiting list for case management. Mother initiated contact with the YWCA on July 10, 2009 for enrollment in CHOICES scheduled to begin September 21, 2000 [sic]. Mother intends to attend AA as recommended by her therapist. Mother admits not participating in services as needed during the first CHINS case but claims she is now on medication and recognizes the need for services to keep custody of [S.L.]. Mother and Father began marital counseling on August 6, 2009. Father began individual counseling on July 16, 2009. Mother and Father have resided together in the same home since October 2008. There are no reported concerns regarding the condition of the home.
11. Mother and Father currently visit with [S.L.] five (5) times per week for two (2) hours fully supervised. Mother's history of volatile mood swings in the first CHINS case have [sic] recently improved. Visits generally go well for both parents who meet the child's needs. There have been no observable signs of drug use. Mother failed to immediately submit to three (3) drug screens in the last two (2) weeks although she submitted by the following day.
12. The [Court-Appointed Special Advocate], Beth Moore, has been involved with the family since July 2008. CASA has observed a pattern of ups and downs for Mother over an extended period. Father has been in and out of jail over an extended period of time. The CASA believes the minor child's safety is at risk despite the parents' recent participation in services. Although Mother exhibited a few periods of short-term improvement during the first CHINS case, her volatile emotional state and overall lack of participation and progress from November 2007 through September 2008 remains a concern. The parents did not make significant progress in the first CHINS case even with the coercive intervention of the Court. Father's plan to monitor and keep Mother stabilized is not adequate.
13. The Court hereby finds that the recent compliance with services demonstrated by the parents in this short-term period of relative stability does not sufficiently overcome their lengthy and repetitive pattern of criminal activity, drug use, and instability that has historically made them unable to safely parent prior born children.
....
The court, also having the Motion to Cease Reasonable Efforts to Reunify and to Establish a Permanency Plan under advisement, now FINDS and ORDERS as follows: Having considered the evidence, pursuant to IC XX-XX-XX-X.6, reasonable efforts to reunify the child with the parents or to preserve the child's family as described in IC XX-XX-XX-X.5 are not required. The Court specifically finds the following:
The parental rights of the parents with respect to the parent's biological child have been involuntarily terminated by Tippecanoe Superior Court III ...
It is therefore ordered that the Tippecanoe County [DCS] shall cease any reasonable reunification or family preservation efforts ...
Appellant's App. at 182.
Following a September 1, 2009 hearing, the juvenile court entered a dispositional order incorporating the statements of the predispositional order. This appeal ensued.

Discussion and Decision

I. Sufficiency of Evidence
Mother and Father contend that the evidence is insufficient to support the juvenile court's CHINS determination. When reviewing the sufficiency of evidence, we give due regard to the juvenile court's ability to assess the credibility of witnesses. Parmeter v. Cass County Dep't of Child Servs., 878 N.E.2d 444, 450 (Ind. Ct. App. 2007). Thus, we neither reweigh evidence nor judge witness credibility. Slater v. Marion County Dep't of Child Servs., 865 N.E.2d 1043, 1046 (Ind. Ct. App. 2007). Rather, we consider the evidence and reasonable inferences most favorable to the judgment. In re D.H., 859 N.E.2d 737, 741 (Ind. Ct. App. 2007). Here, the juvenile court entered findings of fact and conclusions thereon. Thus, we apply a two-tiered standard of review and will not set aside the findings or judgment unless they are clearly erroneous. Parmeter, 878 N.E.2d at 450. First, we consider whether the evidence supports the factual findings. Id. Then, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or indirectly." Id. (citation and quotation marks omitted). A judgment is clearly erroneous if it relies on an incorrect legal standard. Id.
The Fourteenth Amendment to the United States Constitution provides parents with the right to establish a home and raise children. In re A.I., 825 N.E.2d 798, 804 (Ind. Ct. App. 2005), trans. denied. However, these protected parental rights are not absolute and must be subordinate to the children's well-being and best interests. Id. at 804-05. Further, as with parental rights terminations, the purpose of a CHINS adjudication is not to punish the parents, but to protect the children. Id. at 805. Thus, "when parents neglect, abuse, or abandon their children, the state has the authority under its parens patriae power to intervene." In re T.H., 856 N.E.2d 1247, 1250 (Ind. Ct. App. 2006).
The DCS has the burden of proving by a preponderance of evidence that a child is a CHINS. Ind. Code § 31-34-12-3. A child is a CHINS if, before the child becomes eighteen years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
Ind. Code § 31-34-1-1. We have held that a parent's lack of cooperation in DCS services is probative in highlighting her inability or refusal to care for the children. In re A.C., 905 N.E.2d 456, 462 (Ind. Ct. App. 2009). The CHINS statute does not require that a court wait until a tragedy occurs to intervene. Roark v. Roark, 551 N.E.2d 865, 872 (Ind. Ct. App. 1990). Rather, a child is a CHINS when he or she is endangered by parental action or inaction. Id.
Mother and Father assert that the evidence is insufficient to support the juvenile court's findings and conclusions. They base their argument largely on their recent improvements and participation in visitation and services. Improvement in the parents' ability to care for their child since the filing of the CHINS petition is relevant. In re W.B., 772 N.E.2d 522, 530 (Ind. Ct. App. 2002). However, the juvenile court's inquiry must also include an evaluation of the parents' habitual patterns of conduct to determine possible long-term effects on the parents' short-term improvements. Id. The balancing of past conduct in light of present behavior is even more crucial where the child has never resided with the parents. Id.
In W.B., the Office of Family and Children (now the DCS) took the parents' newborn twins into immediate custody based on the parents' history of instability, unhealthy living conditions, and criminal behavior that resulted in the removal of their other five children. The twins were determined to be CHINS, and despite the parents' improvements during the pendency of the CHINS proceedings, parental rights were eventually terminated, and we affirmed the termination order on appeal. Here, Mother and Father challenge a CHINS determination rather than a termination order. Nonetheless, the facts are similar. In W.B., the parents made improvements in the areas of housing, visitation, and participation in services. Likewise, here, the juvenile court's findings reflect its recognition that in the few months following S.L.'s birth, Mother and Father made improvements in the areas of visitation and participation in services. However, the record supports the juvenile court's finding that Mother and Father's recent, short-term compliance is overcome by their lengthy pattern of criminal activity, substance abuse, and instability. Like the twins in W.B., S.L. has never resided with Mother and Father, and this makes the balancing of past conduct more crucial in that it is the chiefand arguably onlyindicator of how the two might behave with a child in the home. The record shows that Mother and Father continued to use drugs during the pendency of their other children's CHINS proceedings and that their participation in services during those proceedings was minimal at best. In sum, Mother and Father merely ask us to reweigh evidence, which we may not do. The evidence most favorable to the CHINS judgment supports the juvenile court's findings and conclusions. As such, we find no error here.

II. Reunification
Mother and Father also contend that the juvenile court erred in granting DCS's motion to cease efforts to reunify them with S.L. Indiana Code Section 31-34-21-5.6 provides in pertinent part:
(a) A court may make a finding described in this section at any phase of a child in need of services proceeding.
(b) Reasonable efforts to reunify a child with the child's parent, guardian, or custodian or preserve a child's family as described in section 5.5 of this chapter are not required if the court finds any of the following:
....
(4) The parental rights of a parent with respect to a biological or adoptive sibling of a child who is a child in need of services have been involuntarily terminated by a court under:
(A) IC 31-35-2 (involuntary termination involving a delinquent child or a child in need of services).
The statute clearly states that reasonable efforts at reunification are not required where the parents' parental rights regarding a sibling of the current CHINS have been involuntarily terminated.[2] Here, Mother and Father's parental relationship with C.L. was terminated on May 12, 2009, and both Mother and Father entered admissions to the involuntary termination. Thus, the record supports the juvenile court's conclusion that efforts to reunify S.L. with Mother and Father are not required under the statute.[3] Accordingly, we affirm.
Affirmed.
RILEY, J., and VAIDIK, J., concur.
NOTES
[1] Although neither C.L. nor L.L. is the subject of this appeal, we discuss proceedings related to them where relevant to our discussion regarding Mother's and Father's habitual patterns of conduct as well as services offered to them during the prior proceedings.
[2] To the extent Mother and Father argue that the statute states the reunification may not be required, we note that the use of the term "may" in subsection (a) pertains only to the timing of any such finding.
[3] We note that such a measure is not tantamount to a termination order. In C.T. v. Marion County Dep't of Child Servs., 896 N.E.2d 571 (Ind. Ct. App. 2008), trans. denied (2009), we concluded that

a finding pursuant to Indiana Code Section 31-34-21-5.6 does not abolish a parent's fundamental right to family integrity. Nor does it presuppose an automatic termination of the parent-child relationship. The procedural safeguards contained in Indiana's termination statutes are designed to ensure that parents receive a full and fair hearing before a termination of their parental rights may occur. [DCS] plays an integral part in ensuring that such procedural safeguards are strictly followed, and may not simply wash its hands of a case even after a court has determined that reunification services are no longer required. Such a policy ensures that the best interests of our children are protected.
Id. at 583-84.