v.

STATE of Indiana, Appellee–Petitioner.

No. 54A01–1103–JV–125.

Court of Appeals of Indiana.

Aug. 15, 2011.

Mark Small, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

T.W. appeals the trial court's order requiring him to register as a sex offender for ten years. We affirm.

### Issues

The restated issues before us are:

I.  whether the trial court had subject matter jurisdiction to order T.W. to register as a sex offender; and

II. whether the trial court properly allowed two psychologists to testify at the hearing to determine whether T.W. should register as a sex offender.

### Facts

T.W. was born in December 1991. On June 11, 2009, T.W. was adjudicated to be a delinquent child for engaging in two counts of what would be Class C felony child molesting if committed by an adult. Specifically, T.W. had molested two girls under the age of ten. T.W. was made a ward of the Department of Correction ("DOC"), and underwent counseling both while in confinement and after his release.

On September 14, 2010, the DOC discharged T.W. from its custody. On September 22, 2010, the State filed a petition to require T.W. to register as a sex offender, along with an accompanying motion to have T.W. professionally evaluated to determine his risk of reoffending. On September 24, 2010, the trial court appointed two psychologists, Anthony Flores and Kathi Lange, to evaluate T.W. There is no indication that T.W.'s attorney was served with the petition to require T.W. to register as a sex offender, the motion to have T.W. evaluated, or the order appointing the psychologists.

The trial court conducted a hearing in this matter on February 25, 2011. T.W. objected to the testimony of both Flores and Lange on the basis that counsel had not received the initial notice of their appointment to evaluate T.W., and on the additional basis that communications between Flores and Lange and T.W. were protected by the psychologist-patient privilege. The trial court overruled these objections. Flores and Lange both testified that, despite treatment and counseling T.W. had received, there was a high risk of T.W. committing sex offenses in the future. On February 28, 2011, the trial court entered an order finding clear and convincing evidence that T.W. was at high risk of reoffending and ordered him to register as a sex offender for ten years. T.W. now appeals.

### Analysis

#### I. Subject Matter Jurisdiction

■ First, T.W. argues that the trial court lacked subject matter jurisdiction to order him to register as a sex offender. Although T.W. did not object to the proceedings below on this basis, an absence of subject matter jurisdiction is an issue that cannot be waived. *See Wayne Twp. v. Indiana Dep't of Local Gov't Fin.*, 865 N.E.2d 625, 628 (Ind.Ct.App.2007), *trans. denied.* "Subject matter jurisdiction is the power of a court to hear and adjudicate cases of a particular kind." *State ex rel. Camden v. Gibson Circuit Court*, 640 N.E.2d 696, 697 (Ind.1994).

T.W.'s claim of lack of subject matter jurisdiction is rooted in his contention that ordering a juvenile delinquent to register as a sex offender is inconsistent with the overall purpose of the Juvenile Code.[1] Specifically, he notes that one of the stated purposes of that Code is to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation...." Ind.Code § 31–10–2–1(5). We have construed this language as meaning that the State's primary interest in juvenile delinquency proceedings is " 'the *rehabilitation*, rather than the punishment, of juvenile delinquents.' " *In re G.B.*, 709 N.E.2d 352, 354 (Ind.Ct.App.1999) (quoting *B.L. v. State*, 688 N.E.2d 1311, 1314 (Ind. Ct.App.1997)).

This court previously has held that requiring a juvenile to register as a sex offender does "not constitute an additional penalty." *K.J.P. v. State*, 724 N.E.2d 612, 615 (Ind.Ct.App.2000) (citing *In re G.B.*, 709 N.E.2d 352, 355 (Ind.Ct.App.1999)), *trans. denied.* T.W. contends that *K.J.P.* necessarily was overruled by our supreme court's decision in *Wallace v. State*, 905 N.E.2d 371 (Ind.2009). In *Wallace*, the court held that requiring an adult offender to register as a sex offender constitutes additional punishment in violation of the ban on ex post facto laws found in the Indiana Constitution, where the offender was charged, convicted, and served a sentence for a crime before the Indiana Sex Offender Registration Act took effect. *Wallace*, 905 N.E.2d at 384.

As T.W. acknowledges, this court recently rejected in *C.E.K., II v. State*, 928 N.E.2d 258 (Ind.Ct.App.2010), *trans. denied,* the claim that *Wallace* overruled *K.J.P.* Although T.W. asks us to reconsider the result we reached in *C.E.K.*, we see no reason to do so. As we noted in *C.E.K.*, *Wallace* did not hold that the sex offender registry is facially unconstitutional, and our supreme court's opinion gave no indication that its holding applied to juveniles attempting to make non-ex post facto challenges to having to register as a sex offender. *C.E.K.*, 928 N.E.2d at 260.

■ In any event, the Juvenile Code does not absolutely prohibit a juvenile court or court with juvenile jurisdiction

---

1. Indiana Code Section 11–8–8–4.5(b)(2) provides that the term "sex offender" for purposes of Indiana's sex offender registry includes:
    a child who has committed a delinquent act and who:
    (A) is at least fourteen (14) years of age;
    (B) is on probation, is on parole, is discharged from a facility by the department of correction, is discharged from a secure private facility (as defined in IC 31–9–2–115), or is discharged from a juvenile detention facility as a result of an adjudication as a delinquent child for an act that would be an offense described in subsection (a) [including child molesting] if committed by an adult; and
    (C) is found by a court by clear and convincing evidence to be likely to repeat an act that would be an offense described in subsection (a) if committed by an adult.

from imposing what might be called "punishment" upon a juvenile. Certainly, a juvenile court may order a number of dispositions that would be "punishment" if imposed upon an adult, up to and including commitment to the custody of the DOC. We also observe that another of the stated purposes of the Juvenile Code is to "promote public safety and individual accountability by the imposition of appropriate sanctions...." I.C. § 31–10–2–1(11). The sex offender registry is directly related to the protection of the public. *See K.J.P.,* 724 N.E.2d at 615. To the extent that requiring a juvenile delinquent to register as a sex offender may be "punitive" in some ways, the policy and purposes behind the Juvenile Code do not bar the imposition of such a requirement.

■ Moreover, whatever the general policy and purposes underlying the Juvenile Code may be, T.W. fails to explain how that would divest a juvenile court of subject matter jurisdiction to issue a sex offender registration order. The subject matter jurisdiction of Indiana's circuit courts "is entirely a creature of the legislature." *Camden,* 640 N.E.2d at 697 (citing Ind. Const. Art. 7, § 8). In this case, Montgomery County does not have a separate juvenile court; thus, the Montgomery Circuit Court had subject matter jurisdiction over T.W.'s juvenile proceedings. *See* I.C. § 33–23–7–1.

Indiana Code Section 11–8–8–4.5(b)(2) provides that "a court" may make a finding that a juvenile should be placed on the sex offender registry, if the criteria of that statute are met. Although the sex offender registry statutes are not part of the Juvenile Code, it is logical to assume that the General Assembly intended courts with

juvenile jurisdiction to also have subject matter jurisdiction to make a sex offender registry finding. T.W. makes no argument that it violates either the United States or Indiana Constitutions to require him to register as a sex offender.[2] In the absence of any constitutional constraints, it was entirely with the General Assembly's prerogative to grant Indiana courts the subject matter jurisdiction to enter orders requiring certain juveniles to register as sex offenders. T.W.'s contrary argument is unavailing.

## II. Admissibility of Testimony

■ Next, we address T.W.'s contention that the trial court should have sustained his objections to the testimony of psychologists Flores and Lange. We review rulings on the admissibility of evidence for an abuse of discretion. *Walker v. Cuppett,* 808 N.E.2d 85, 92 (Ind.Ct.App.2004). An abuse of discretion occurs if the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or if the court's decision is without reason or is based upon impermissible considerations. *Id.*

■ We first address T.W.'s argument that the testimony should have been excluded because his attorney failed to receive notice ahead of time that he was to be examined by Flores and Lange. T.W. cites no authority for this argument. In any event, assuming without deciding that T.W.'s attorney should have received advance notice of the examinations, such error could be compared to a discovery violation in failing to disclose evidence. A continuance is usually the proper remedy for such a violation, unless the violation is

---

**2.** To the extent juvenile offenders are treated differently from adults, that difference arose out of legislative reforms that were influenced by the Progressive Movement of the late 19th and early 20th centuries. *See Camden,* 640 N.E.2d at 697. T.W. does not argue that such difference in treatment is constitutionally required.

flagrant and deliberate, or so misleading or in such bad faith as to impair the right to a fair trial. *Dye v. State*, 717 N.E.2d 5, 11 (Ind.1999), *cert. denied; see also Everage v. Northern Indiana Pub. Serv. Co.*, 825 N.E.2d 941, 951 (Ind.Ct.App.2005).

Here, there is nothing to indicate deliberate malfeasance or bad faith by the State in failing to provide T.W.'s attorney with advance notice of his examinations by Flores and Lange. We observe that T.W. does not argue that he had any right to have his attorney present at those examinations.[3] T.W. also makes no argument that his attorney was unable to adequately prepare for his sex offender registry hearing due to his failure to receive advance notice of the examinations, and T.W.'s attorney did not request a continuance of the hearing. We cannot say the trial court abused its discretion in refusing to sustain T.W.'s objections to Flores's and Lange's testimony on this basis.

■ T.W. also contends that permitting Flores and Lange to testify over his objection violated Indiana Code Section 25–33–1–17, which states:

A psychologist licensed under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity, except under the following circumstances:

(1) Trials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide.

(2) Proceedings the purpose of which is to determine mental competency, or in which a defense of mental incompetency is raised.

(3) Actions, civil or criminal, against a psychologist for malpractice.

(4) Upon an issue as to the validity of a document such as a will of a client.

(5) If the psychologist has the expressed consent of the client or subject, or in the case of a client's death or disability, the express consent of the client's legal representative.

(6) Circumstances under which privileged communication is abrogated under the laws of Indiana.

It is apparent that the first five exceptions to this statutory psychologist-patient privilege do not apply here. The question is whether the sixth, "catch all" exception applies.

We conclude that it does. We note that when a trial court is tasked with deciding whether a juvenile qualifies as a "sex offender" for purposes of the sex offender registry, "the court *shall* consider expert testimony concerning whether a child is likely to repeat an act that would be an offense described in subsection (a) if committed by an adult." I.C. § 11–8–8–4.5(c) (emphasis added). It would be impossible for a trial court to carry out this statutory mandate if it could not, because of the statutory psychologist-patient privilege, receive testimony from psychologists or other mental health experts who have examined the juvenile.

We also observe that Indiana Code Section 31–37–8–4.5(b) provides, with respect to a mental health evaluation ordered by a juvenile court, "a statement communicated to an evaluator in the evaluator's official capacity may not be admitted as evidence against the child on the issue of whether the child committed a delinquent act or a crime."[4] The clear import of this statute

---

3. In fact, it is doubtful that he had any such right. *See Williams v. State*, 555 N.E.2d 133, 136 (Ind.1990) (holding that defendant who had pleaded insanity and was to be examined by court-appointed experts had no right for counsel to present at those examinations).

4. There are certain exceptions to this rule, not relevant here, found in subsections (b)(1) and

is that such statements are otherwise admissible for purposes that the statute does not expressly exclude, which would include sex offender registry proceedings and whether there is a likelihood that the juvenile will reoffend. As a general rule of statutory construction, when certain items or words are specified or enumerated in a statute, then other items or words not so specified or enumerated are excluded from the statute's scope. *See State v. Willits,* 773 N.E.2d 808, 813 (Ind.2002).

Finally, our holding today is consistent with a case in which we examined the psychologist-patient privilege in the context of termination of parental rights proceedings, *Ross v. Delaware County Dep't of Pub. Welfare,* 661 N.E.2d 1269 (Ind.Ct. App.1996), *trans. denied.* There, we held that the statutory psychologist-patient privilege was abrogated as a matter of law in termination of parental rights proceedings, despite the absence of a statute expressly abrogating the right in such proceedings. *Id.* at 1271. We relied upon *Shaw v. Shelby County Dep't of Pub. Welfare,* 612 N.E.2d 557, 558 (Ind.1993), wherein our supreme court abrogated the physician-patient privilege in termination of parental rights proceedings, where there was a statute expressly abrogating the right in children in need of services proceedings but not termination proceedings. Here, likewise, there is no statute expressly abrogating the psychologist-patient privilege in juvenile sex offender registry proceedings. Nonetheless, we conclude that such proceedings under Indiana Code Chapter 11–8–8 necessarily present a situation in which the privilege "is abrogated under the laws of Indiana" by implication, at least with respect to the question

of whether a juvenile is likely to reoffend.[5] *See* I.C. § 25–33–1–17(6). The trial court did not err in overruling T.W.'s privilege-based objection to Flores's and Lange's testimony.

### Conclusion

The trial court had subject matter jurisdiction to find that T.W. is required to register as a sex offender, and it did not abuse its discretion in overruling T.W.'s objections to the testimony of Flores and Lange. We affirm.

Affirmed.

ROBB, C.J., and BRADFORD, J., concur.

---

(2), (c), and (d) of Indiana Code Section 31–37–8–4.5.

5. Communications between a psychologist and a juvenile on subjects unrelated to the likelihood of reoffending may still be subject to the privilege, however.