# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DONALD R. SHULER**
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

FILED
Mar 20 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1202-JV-76 |
| | ) | |
| I.T., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1111-JD-519

**March 20, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

The State appeals from the juvenile court's order rescinding its prior approval of a delinquency petition filed against I.T. Concluding *sua sponte* that the State is without authority to appeal a juvenile court's order withdrawing its approval of the filing of a delinquency petition, we dismiss.[1]

In April 2011, then fifteen-year-old I.T. was adjudicated a delinquent child for committing an act that would constitute class B felony child molesting if committed by an adult. As part of its dispositional order, the juvenile court placed I.T. on probation and ordered him to participate in an outpatient treatment program for juveniles with sexual behavior problems. The court also ordered I.T. to undergo polygraph examinations to ensure his compliance with the rules of probation and the treatment program. During one of these court-ordered polygraph examinations, I.T. admitted to molesting two additional children. Specifically, he stated that in September of 2010, he induced E.T., his mentally-challenged, thirteen-year-old brother, to perform oral sex on him and one of his friends. He also stated that in October 2010, he touched J.W., his three-year-old cousin, on her vagina in a sexual manner.[2]

On August 31, 2011, I.T.'s probation officer reported to the Department of Child Services (DCS) that I.T. had admitted to molesting E.T. and J.W. DCS, in turn, notified the police. E.T. was interviewed on September 2, 2011, and he reported that I.T. and one of

---

[1] We held oral argument in this matter on January 30, 2013.

[2] As a result of these and other disclosures, the probation department filed a petition to modify the dispositional decree arising out of I.T.'s original delinquency adjudication. After a hearing on July 25, 2011, the juvenile court granted the petition and ordered I.T.'s placement in a residential treatment facility. I.T. does not challenge the modification of the dispositional decree in this appeal. Rather, the issues in this appeal stem from the filing of an additional delinquency petition based on I.T.'s alleged molestation of E.T. and J.W.

I.T.'s friends had made him perform oral sex on them. J.W. had been previously interviewed as a result of a complaint made by her father. During the interview, J.W. indicated that she had been touched inappropriately, but was unable to provide the name of the perpetrator, instead referring to him only by a nickname that was believed at the time to reference E.T. Due to J.W.'s young age, the police did not interview her a second time after I.T. admitted to fondling her.

Also on September 2, 2011, Detective David Miller met with I.T. and his mother. I.T. and his mother were provided a waiver-of-rights form advising them of I.T.'s *Miranda* rights and their right to meaningful consultation. I.T. and his mother both signed the form indicating that they wished to waive their rights, and I.T. gave a statement in which he admitted to molesting J.W. and E.T.

Thereafter, on November 21, 2011, the State filed a delinquency petition alleging that I.T. was a delinquent child for committing what would be, if committed by an adult, class B felony child molesting against E.T. and class C felony child molesting against J.W. On November 30, 2011, the juvenile court issued an order approving the filing of the delinquency petition in which it found probable cause to believe that I.T. was a delinquent child and that it was in the best interest of I.T. and/or the public that the delinquency petition be filed.

On December 19, 2011, I.T. filed a motion to dismiss the delinquency petition, alleging that the delinquency allegations arose from I.T.'s disclosures during sex-offender treatment, and that those disclosures were inadmissible under Ind. Code Ann. § 31-37-8-4.5

(West, Westlaw current through 2012 2nd Reg. Sess.), which provides that a child's statements to a mental health evaluator "may not be admitted as evidence against the child on the issue of whether the child committed a delinquent act or a crime." A hearing was held the next day, at which the State argued that the statute was not implicated because the State had no intention of calling a mental health treatment provider as a witness or introducing I.T.'s statements during the polygraph into evidence. Rather, the State indicated that it would admit evidence from Detective Miller's September 2 interview of I.T., as well as evidence from the interviews of E.T. and J.W., and testimony from the investigating officer and the victims themselves. I.T. responded that this evidence would not have been discovered but for I.T.'s statements during the polygraph and was therefore inadmissible as fruit of the poisonous tree. At the conclusion of the hearing, the juvenile court took the matter under advisement and asked the parties to submit briefs.

The parties submitted briefs as ordered, and on January 19, 2012, the juvenile court issued a detailed, eighteen-page order, in which it concluded that Ind. Code Ann. §§ 31-32-2-2.5 and 31-37-8-4.5 (West, Westlaw current through 2012 2nd Reg. Sess.)[3] confer an immunity with respect to the statements I.T. made during his polygraph examination, and that

---

[3] Although the language of I.C. § 31-37-8-4.5 is nearly identical to that in I.C. § 31-32-2-2.5, the former statute applies to mental health screening and evaluation conducted as part of a preliminary inquiry into whether a child has committed a delinquent act, while the latter statute applies to mental health screening and evaluation conducted as part of juvenile proceedings. *See* I.C. § 31-37-8-4.5(a) (providing that the statute applies only to mental health screening, assessment, evaluation, or treatment conducted by an evaluator "in conjunction with proceedings under this *chapter*" (emphasis supplied); I.C. § 31-32-2-2.5(a) (providing that the statute applies only to mental health screening, assessment, evaluation, or treatment conducted by an evaluator "in conjunction with proceedings under this *article*" (emphasis supplied)). Because the polygraph in this case was conducted as part of I.T.'s treatment and monitoring pursuant to a dispositional decree entered as a result of a previous delinquency adjudication, as opposed to a preliminary inquiry, I.C. § 31-37-8-4.5 is not applicable.

the immunity extended to "any evidence derivatively gained as a result of his disclosures."

*Appellant's Appendix* at 95. The court went on to conclude that

> [r]emoving the consideration of the prohibited evidence, the Court can find no other evidence whatsoever to support a finding of probable cause to believe that the child committed the delinquent acts alleged in the Petition filed in this case, nor can the Court find that it is in the best interest of the child or the public that the petition in this case be filed.

*Id.* at 100. The court therefore "rescind[ed] the previously granted Order Approving Filing of the Delinquency Petition" and concluded that its decision to set aside that order was grounds for dismissal.[4] *Id.* The State now appeals.

As an initial matter, we note that it is a "bedrock fundamental of criminal appellate law" that "the State must have statutory authorization to bring an appeal of a criminal matter."[5] *State v. Brunner*, 947 N.E.2d 411, 415 (Ind. 2011); *see also* Ind. Code Ann. § 35-

---

[4] The juvenile court also cited two additional bases for dismissal: (1) I.T. had immunity "because the only allegations cited in the support of the charges against him are protected statements and evidence which is derivative of those statements;" and (2) "when any and all inadmissible evidence is excluded from consideration . . . there is no probable cause for the allegations contained in the Petition[.]" *Appellant's Appendix* at 100. We need not address these conclusions because we resolve this case based on the dispositive reasoning set forth above.

[5] We note that neither party discussed the issue of the State's right to appeal in this matter in their briefs or at oral argument. The failure to raise an issue would ordinarily result in waiver. We note, however, that

> [t]he rule forbidding the discussion of points not originally suggested by appellant is made for the protection of the court, and only operates to excuse the court from considering questions that are not shown to have any material bearing upon the rights of the parties. Notwithstanding the failure of counsel to present the question, the court may consider and decide a question presented by the record, and may go outside the briefs of counsel for reasons upon which to base the decision, in order to do justice to the parties.

*Grant v. Wal-Mart Stores, Inc.*, 764 N.E.2d 301, 301 n.1 (Ind. Ct. App. 2002) (quoting *White v. White*, 208 Ind. 314, 317, 196 N.E. 95, 96 (1935)). The issue of the State's right to appeal came to our attention after oral argument, and we conclude that it is appropriate to address this issue *sua sponte* in order to do justice in this case. *See State v. Brunner*, 947 N.E.2d at 415 (holding that the purpose behind the rule requiring statutory authorization for the State to appeal is "the idea that if the State brings a citizen before its own tribunal and loses, 'its avenging hand should be stayed except in unusual cases where the power to appeal was expressly conferred.'" (quoting *State v. Sierp*, 260 Ind. 57, 60, 292 N.E.2d 245, 246 (1973))).

38-4-2 (West, Westlaw current through 2012 2nd Reg. Sess.) (setting forth circumstances in which the State may appeal). "The State's statutory right of appeal is in contravention of common law principles and is therefore strictly construed." *State v. Coleman*, 971 N.E.2d 209, 211 (Ind. Ct. App. 2012). Of course, we are not dealing with a criminal matter in this case—juvenile proceedings are civil in nature and an act of juvenile delinquency is not a crime. *J.V. v. State*, 766 N.E.2d 412 (Ind. Ct. App. 2002), *trans. denied*. Nevertheless, I.C. § 31-32-1-1 (West, Westlaw current through 2012 2nd Reg. Sess.), provides that "[i]f a child is alleged to be a delinquent child, the procedures governing criminal trials apply in all matters not covered by the juvenile law." It is apparent to us that the rule requiring statutory authorization for the State to appeal in criminal matters is a procedural one; thus, we are left to determine whether the juvenile law has addressed the issue.

I.C. § 31-32-15-1 (West, Westlaw current through 2012 2nd Reg. Sess.), which is located in the article entitled "Juvenile Law: Juvenile Court Procedures", and is the sole section within the chapter entitled "Appeals," provides simply that "[a]ppeals may be taken as provided by law." This provision was clearly designed to incorporate existing law found outside the juvenile code—and in light of I.C. § 31-32-1-1, we believe this includes the procedural rule requiring statutory authorization for the State to appeal in criminal matters. *See State v. C.D.*, 947 N.E.2d 1018 (Ind. Ct. App. 2011) (applying to a juvenile delinquency proceeding the statute addressing the State's right to appeal in criminal matters).

I.C. § 35-38-4-2 sets forth the circumstances under which the State may appeal in criminal matters (and, by extension, juvenile delinquency proceedings). The statute provides:

Appeals to the supreme court or to the court of appeals, if the court rules so provide,[6] may be taken by the state in the following cases:

(1) *From an order granting a motion to dismiss an indictment or information.*

(2) From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.

(3) From an order granting a motion to correct errors.

(4) Upon a question reserved by the state, if the defendant is acquitted.

(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution.

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) the remedy by appeal after judgment is otherwise inadequate.

I.C. § 35-38-4-2 (emphasis supplied). Subsections (2), (3), (4), (5), and (6) are plainly inapplicable to the case at hand.[7] Thus, we must determine whether subsection (1) applies— that is, whether the State is appealing from "an order granting a motion to dismiss an indictment or information." It is apparent from the parties' briefings that they have regarded

---

[6] "[T]he clause 'if the court rules so provide' is intended to differentiate between the respective jurisdictions of the Supreme Court and the Court of Appeals, and thereby act as a guide to counsel for the State as to which appellate court the appeal should properly be filed with." *State v. Williams*, 445 N.E.2d 582, 584 (Ind.Ct.App.1983) (referring to predecessor statute). Thus, the clause is not intended to require the adoption of court rules authorizing appeals by the State. *State v. Williams*, 445 N.E.2d 582.

[7] Although the juvenile court's order discussed at length the admissibility of the State's evidence, its order was not "an order granting a motion to suppress evidence" under subsection (5) because no motion to suppress was filed. Moreover, the order did not simply rule that certain evidence would not be admitted at a fact-finding hearing, but rather terminated the delinquency proceeding altogether. In any event, our analysis of this matter under I.C. § 35-38-4-2(1) would also be applicable to any claim that the juvenile court's order was "an order granting a motion to suppress evidence" under subsection (5) of that statute.

the juvenile court's order as such, and this conclusion is, at first blush, reasonable. Indeed, the juvenile court's order was issued in response to I.T.'s motion to dismiss, and the court specifically stated in its order that it was dismissing the delinquency petition. Upon further consideration, however, it is apparent to us that the juvenile court's order in this case does not constitute an "an order granting a motion to dismiss an indictment or information" for the purposes of I.C. § 35-38-4-2.

In reaching this conclusion, we believe it is important to remember that juvenile delinquency proceedings are initiated differently than criminal proceedings. A criminal prosecution is commenced upon the filing of an information or indictment by a prosecuting attorney. Ind. Code § 35-34-1-1 (West, Westlaw current through 2012 2nd Reg. Sess.). Prior to the commencement of juvenile delinquency proceedings, however, the filing of a delinquency petition must be *approved* by the juvenile court. Ind. Code Ann. § 31-37-10-2 (West, Westlaw current through 2012 Second Reg. Sess.) (providing that the juvenile court shall consider the evidence and preliminary inquiry and "[a]pprove the filing of a petition if there is probable cause to believe that: (A) the child is a delinquent child; and (B) it is in the best interests of the child or the public that the petition be filed").[8] Thus, unlike in criminal matters, the juvenile court acts as a gatekeeper in deciding whether delinquency allegations will go forward based on both the weight of the evidence and considerations of the best interests of the child and society at large. This distinction reflects the broad discretion

---

[8] Such judicial approval of the delinquency petition was once viewed as necessary to confer jurisdiction on the juvenile court, but our Supreme Court has clarified that the approval is a procedural requirement. *K.S. v. State*, 849 N.E.2d 538 (Ind. 2006).

8

afforded juvenile courts based on the doctrine of *parens patriae*, upon which the juvenile court was founded. *See In re K.G.*, 808 N.E.2d 631 (Ind. 2004). The doctrine allows the juvenile court "the power to step into the shoes of the parents" and "further the best interests of the child, which implies a broad discretion unknown in the adult criminal court system." *Id.* at 635, 636.

It seems evident to us that a juvenile court's order declining to approve the filing of a delinquency petition under I.C. § 31-37-10-2 is not "an order granting a motion to dismiss an indictment or information" for the purposes of I.C. § 35-38-4-2(1). Rather, a juvenile court's decision not to approve the filing of a juvenile delinquency petition prevents the initiation of juvenile proceedings in the first place. One cannot dismiss a proceeding that was really never commenced to begin with. It appears that the State has not in the past treated such decisions as dismissals giving the State a right to appeal. At least, we have not discovered a case in which the State appealed a juvenile court's refusal to approve the filing of a delinquency petition.

Thus, if the juvenile court in this case had initially declined to approve the filing of the delinquency petition against I.T., the State would have no right to appeal. In this case, however, the juvenile court initially approved the filing of the delinquency petition, but later withdrew its approval. We do not believe this fact does anything to change the nature or import of the juvenile court's order declining to approve the filing of the delinquency petition, e.g., it does not transform that order into a dismissal. This court has repeatedly noted that "a trial court has the inherent power to reconsider any previous ruling so long as

9

the action remains *in fieri*." *Johnson v. Estate of Brazill*, 917 N.E.2d 1235, 1239 n.5 (Ind. Ct. App. 2009).

Nor can we conclude that, in this particular case, the specific language in the juvenile court's order indicating that it was dismissing the delinquency petition, in part because it had withdrawn its original approval thereof, transforms the court's action into a dismissal. The juvenile court's order declining to approve the filing of the delinquency petition, although entered after initially approving the filing, retroactively rescinded the initiation of juvenile proceedings. Because the juvenile court rescinded its order approving the filing of the delinquency petition, the purported dismissal of the delinquency petition was superfluous. Put another way, once the juvenile court "unapproved" the initial filing of the delinquency petition, there was no delinquency petition left to dismiss.

Because we conclude that the juvenile court's order was not "an order granting a motion to dismiss an indictment or information" for the purposes of I.C. § 35-38-4-2(1), we conclude that the State has no statutory right to appeal in this case, regardless of the merits of the juvenile court's ruling. We therefore dismiss the State's appeal.

Dismissed.

BROWN, J., and PYLE, J., concur.