ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Donald R. Shuler
Goshen, Indiana

_____

# In the
# Indiana Supreme Court

**FILED**
Mar 12 2014, 11:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

_____

No. 20S03-1309-JV-583

STATE OF INDIANA,

*Appellant (Petitioner),*

v.

I.T.,

*Appellee (Respondent).*

_____

Appeal from the Elkhart Circuit Court, Juvenile Division, No. 20C01-1111-JD-519
The Honorable Terry C. Shewmaker, Judge
The Honorable Deborah Domine, Juvenile Magistrate

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 20A03-1202-JV-76

**March 12, 2014**

**Rush, Justice.**

More than half of children entering the Indiana juvenile justice system have mental health or substance abuse problems. In response, Indiana has established a pilot project to screen and treat juveniles suffering from these issues. To facilitate participation in the project, the Legislature enacted the Juvenile Mental Health Statute, barring a child's statement to a mental health evaluator from being admitted into evidence to prove delinquency. We construe that statute to confer both use immunity and derivative use immunity, in order to avoid a likely violation of the constitutional privileges against self-incrimination under the Fifth Amendment and Article 1, Section 14 of the Indiana Constitution. We therefore affirm the trial court.

**Facts and Procedural History**

I.T. admitted to conduct that would be Class B felony child molesting if committed by an adult. As a condition of his probation, the trial court ordered him to undergo treatment for juveniles with sexual behavior problems, including polygraph examinations. During one of those exams, I.T. admitted to molesting two other children. As a result, the trial court moved I.T. from his home to juvenile detention, then to residential treatment in the START (Sexually Traumatized Adolescents in Residential Treatment) program. In addition, the Department of Child Services and the police investigated the admissions, and the police then interviewed one of the victims and I.T. The State filed a new delinquency petition based on I.T.'s statements to his therapist.

The juvenile court initially approved the new delinquency petition, but I.T. moved to dismiss it, arguing that the Juvenile Mental Health Statute, Ind. Code § 31-32-2-2.5(b) (2008), barred the State's evidence. The trial court granted the motion, finding that the Statute prohibited using I.T.'s statements to the evaluator or evidence derived from those statements: "Removing the consideration of the prohibited evidence, the Court can find no other evidence whatsoever to support a finding of probable cause, . . . nor can the Court find that it is in the best interest of the child or the public that the petition in this case be filed." The court gave the State ten days to refile based on independently gathered evidence, but the State appealed instead.

The Court of Appeals concluded "*sua sponte* that the State is without authority to appeal a juvenile court's order withdrawing its approval of the filing of a delinquency petition." State v. I.T., 986 N.E.2d 280, 281 (Ind. Ct. App. 2013), trans. granted, 993 N.E.2d 625 (Ind. 2013). We granted transfer to address two issues. Ind. Appellate Rule 58(A). First, we address whether the State could appeal the trial court's decision and conclude it could because the trial court essentially suppressed evidence ending the proceeding. Second, we reconcile the limited immunity in part (b) of the Juvenile Mental Health Statute with the constitutional privilege against self-incrimination, and construe the Statute to conform to that privilege. Here, because I.T.'s statements during a court-ordered therapeutic polygraph were impermissibly used against him, we affirm the trial court.

**Standard of Review**

The State's right to appeal the trial court's order and the scope of I.T.'s immunity under the Juvenile Mental Health Statute are both issues of law. We therefore review them *de novo*. Branham v. Varble, 952 N.E.2d 744, 746 (Ind. 2011).

**Discussion and Decision**

## I.  State's Authority to Appeal.

The Court of Appeals determined that the State lacked the statutory authority to appeal because the State may appeal criminal matters only when authorized by statute. State v. Brunner, 947 N.E.2d 411, 415 (Ind. 2011).[1] The State argues it may appeal the order because the trial court labeled its order a "Memorandum and Order on Motion to Dismiss," and Indiana Code section 35-38-4-2(1) (2008) provides that the State may appeal "an order granting a motion to dismiss an indictment or information." But in juvenile proceedings, the State files a delinquency petition, not an indictment or an information. I.C. § 31-37-10-1 (2008). That difference is significant because unlike an indictment or information, filing a delinquency petition requires the trial court's approval—a discretionary finding of "probable cause to believe that: (A) the child is a delinquent child; and (B) it is in the best interests of the child or the public that the petition be filed." I.C. § 31-37-10-2(2) (2008). By contrast, "lack of probable cause is not grounds for dismissing a charging information" against an adult offender, Flowers v. State, 738 N.E.2d 1051, 1055 (Ind. 2000), let alone on any "best interests" grounds. We therefore agree with the Court of Appeals that a juvenile court's discretionary decision to disapprove a delinquency petition is not within any of the statutory grounds for the State to appeal. I.C. § 35-38-4-2.

But unlike the Court of Appeals, we do not find that principle dispositive here. The Court of Appeals looked beyond the order's title and found that in substance, the order did not dismiss an indictment but rather "unapproved" the initial filing of the delinquency petition. I.T., 986 N.E.2d at 286. Reading the order as a whole, though, we think the order is better characterized as suppressing evidence. The trial court did ultimately "rescind[] the previously granted Order Approving Filing of the Delinquency Petition" for lack of probable cause, echoing Indiana Code section 31-37-10-2(2)—but that conclusion rests on finding I.T.'s statements to be "prohibited evidence" under the Juvenile Mental Health Statute, and thus excluded from the trial court's probable-cause and best-interests

---

[1]  While juvenile delinquency proceedings are not criminal in nature, criminal rules apply in juvenile matters unless the juvenile code states otherwise. I.C. § 31-32-1-1 (2008). Here, the juvenile code provides that parties in juvenile matters may appeal as provided by law. I.C. § 31-32-15-1 (2008). Therefore, the State needs statutory authority to appeal juvenile delinquency proceedings, just as it does for criminal matters. See State v. C.D., 947 N.E.2d 1018, 1021 (Ind. Ct. App. 2011).

analysis. At bottom, then, the trial court's order suppresses evidence and its "ultimate effect . . . is to preclude further prosecution," I.C. § 35-38-4-2(5)—an enumerated basis for the State to appeal, even in juvenile matters, see C.D., 947 N.E.2d at 1021. Therefore, we conclude the State had statutory authority to appeal the trial court's order, and we proceed to the merits of its appeal.

## II. The Juvenile Mental Health Statute Must Provide Both Use and Derivative Use Immunity to Pass Constitutional Scrutiny.

The State argues that the Juvenile Mental Health Statute prevents it from introducing I.T.'s actual statements to prove delinquency at trial, but not from using his statements to develop other evidence—in other words, that the Statute provides "use immunity" but not "derivative use immunity." See In re Caito, 459 N.E.2d 1179, 1183 (Ind. 1984) (citing Kastigar v. United States, 406 U.S. 441 (1972)). But the trial court concluded that the Statute gives I.T. a limited immunity against both use and derivative use of his statements, reasoning that because the constitutional privilege against self-incrimination confers both forms of immunity, the Statute cannot be construed to provide any less protection. The State makes a compelling argument that the Statute's language confers only use immunity—but to avoid a likely violation of the constitutional privilege against self-incrimination, we construe it to confer derivative use immunity as well.

### A. *The Statute's terms clearly confer use immunity, but do not necessarily extend to derivative use immunity.*

We begin with the language of the Statute to determine the scope of its protections. "Our primary goal in interpreting any statute is to effectuate legislative intent." N.L. v. State, 989 N.E.2d 773, 777 (Ind. 2013). An unambiguous statute needs no interpretation, and courts must "giv[e] effect to the plain and ordinary meaning of the language." Sloan v. State, 947 N.E.2d 917, 922 (Ind. 2011). But on the other hand, "when the validity of a statute is drawn in question, *and even if a serious doubt of constitutionality is raised*, it is a cardinal principle that the Supreme Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Indiana Wholesale Wine & Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n, 695 N.E.2d 99, 106 (Ind. 1998) (emphasis added) (substitutions omitted) (quoting Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 348 (1936) (Brandeis, J., concurring)). Adopting such a saving construction respects the "strong presumption of constitutionality" of statutes that come before us for review. See Girl Scouts of So. Ill. v. Vincennes Ind. Girls, Inc., 988 N.E.2d 250, 255 (Ind. 2013).

The Juvenile Mental Health Statute, which applies only in juvenile proceedings, generally prohibits the State from using a child's statements to an evaluator[2] as evidence against the child on the issue of delinquency, subject to several exceptions:

> (b) Except as provided in subsection (d) and except for purposes of:
>
> > (1) a probation revocation proceeding; or
> >
> > (2) a modification of a dispositional decree under IC 31-37-22;
>
> a statement communicated to an evaluator in the evaluator's official capacity may not be admitted as evidence against the child on the issue of whether the child committed a delinquent act or a crime.
>
> (c) This section does not affect the admissibility of evidence when a juvenile interposes the defense of insanity.
>
> (d) This section does not affect a disclosure or reporting requirement . . . under statute or in case law regarding a statement that:
>
> > (1) relates directly to the facts or immediate circumstances of a homicide; or
> >
> > (2) reveals that the child may intend to commit a crime.

I.C. § 31-32-2-2.5(b)–(d). Those terms do not block the State from using a juvenile's statements in treatment to prove issues other than delinquency. T.W. v. State, 953 N.E.2d 1120, 1124–25 (Ind. Ct. App. 2011) (using juvenile's statements to require juvenile to register as a sex offender). And they expressly permit use of the statements, even to prove delinquency, for purposes of revoking probation, modifying a dispositional decree, and countering an insanity defense. I.C. § 31-32-2-2.5(b)–(c). Further, the statute refers only to a juvenile's "statement," unlike the criminal code's use immunity statute, which expressly extends also to use of "evidence derived from" a witness's testimony. I.C. § 35-34-2-8(a) (2008). Though the statutory language clearly grants use immunity, it is far less clear whether its protection also extends to derivative use of the statement to prompt further investigation to develop similar evidence from other sources.

> B. *Construing a statute to provide both use and derivative use immunity is a safe harbor against violating the constitutional privilege against self-incrimination.*

But failing to provide derivative use immunity would raise a serious doubt about the Statute's constitutionality. Use immunity, standing alone, "cannot protect an individual's right not

---

[2]  Indiana Code section 31-9-2-43.8 (2008) defines an evaluator as "a person responsible for providing mental health screening, evaluation, or treatment to a child in connection with a juvenile proceeding or probation proceeding under this title."

to give evidence against himself because the compelled testimony may still be employed by investigators who have thereby gained a knowledge of the details of the crime and other sources of incriminating evidence." Caito, 459 N.E.2d at 1183. To protect effectively against compelled self-incrimination, then, an immunity statute must grant both use and derivative use immunity. See Kastigar, 406 U.S. at 453; Brown v. State, 725 N.E.2d 823, 826 (Ind. 2000); Caito, 459 N.E.2d at 1183; Wilson v. State, 988 N.E.2d 1211, 1219–20 (Ind. Ct. App. 2013). A statute that compels a statement against oneself, but without providing both forms of immunity, is therefore invalid. Kastigar, 406 U.S. at 453; see also Counselman v. Hitchcock, 142 U.S. 547, 564–65 (1892) (testimony could not be compelled under a statute that did not "prevent the use of [the witness's] testimony to search out other testimony to be used in evidence against him"—that is, derivative use—because it failed to extend the same protection as the constitutional privilege).

Yet using I.T.'s testimony "to search out other testimony to be used in evidence against him" is precisely what the State did here. The court ordered I.T. into treatment as a condition of probation—so remaining silent during therapy could well have been viewed as violating his probation by refusing to participate. Then, during a therapeutic polygraph administered as part of that compulsory treatment, I.T. disclosed two other incidents of child molestation; I.T.'s therapist informed DCS of the new victims; and the State filed a delinquency petition based on I.T.'s admission to his therapist and evidence derived from those admissions. Indeed, the State concedes that but for I.T.'s admissions, it would not have filed the delinquency petition—that is, it had no "independent, legitimate source for the disputed evidence" beyond the statement itself, as would be necessary to avoid a self-incrimination violation. Cf. Kastigar, 406 U.S. at 460 (internal quotation marks omitted) (quoting Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 79 n.18 (1964)). Accordingly, the circumstances of this case necessarily implicate a substantial question about the constitutional protections against self-incrimination.

Nevertheless, we need not directly answer that constitutional question, because "a construction of the statute is fairly possible by which the question may be avoided." Indiana Wholesale, 695 N.E.2d at 106 (quoting Ashwander, 297 U.S. at 348 (Brandeis, J., concurring)). We may not "effectively rewrit[e] a statute to save it from constitutional infirmity"—but we will generally adopt a saving construction as long as there is a reasonable interpretation that avoids the constitutional problem. Id. at 108 n.21 (citing Boehm v. Town of St. John, 675 N.E.2d 318, 321 (Ind. 1996) and Grody v. State, 257 Ind. 651, 659–60, 278 N.E.2d 280, 285 (1972)). Moreover, "the purpose of

6

our juvenile code [is] to 'ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation,'" and it "must be liberally construed to that end." In re K.G., 808 N.E.2d 631, 637 (Ind. 2004) (quoting I.C. § 31-10-2-1(5)). And as set forth below, we believe that adopting a liberal "saving construction" of part (b) of the Statute is consistent with its history and purpose.

   *C. Derivative use immunity is consistent with the Statute's history and purpose, as well as the purposes of the juvenile code in general.*

   The juvenile code's focus on individualized diagnosis and treatment makes it "vastly different" than the adult criminal code. J.C.C. v. State, 897 N.E.2d 931, 935 (Ind. 2008). "This policy is grounded in the Progressive Movement of the 19th and 20th centuries when American society rejected treating juvenile law violators and adult criminals the same, favoring individualized diagnosis and treatment for juveniles." Id. And the Juvenile Mental Health Statute's history shows that same focus.

   Until recently, the aim of diagnosis and treatment was hindered by a failure to screen children for mental health disorders.[3] This lack of diagnosis was particularly troubling because "well over 50 percent" of youth detained in Indiana "have mental health and/or substance abuse problems." Indiana State Bar Ass'n, supra note 3. And even apart from the humane reasons for treating juvenile offenders, failing to treat them is costly: "Placing children with unmet mental health needs in the juvenile justice system and failing to provide them appropriate treatment causes long-term societal costs, including increased life-long health care costs, increased reliance on public welfare support, and greater costs for the overburdened juvenile and criminal justice systems." Id.

   To address that problem, over 250 "lawyers, legislators, government officials, judges, doctors, mental health professionals and educators" gathered in 2004 for the Children, Mental Health and the Law Summit. JauNae M. Hanger, Screening, Assessment and Treatment: Indiana Addresses Mental Health in Juvenile Detention Centers, Corrections Today, Feb. 2008, at 37. In relevant part, two recommendations emerged from the Summit. First, Indiana needed "[a]

---

[3]   The Indiana State Bar Association, Children, Mental Health and the Law Summit: Official Report on Summit Findings with Recommendations 2 (2005), available at http://www.inbar.org/Portals/0/downloads/legal%20news/1-%20reference%20materials/D10%20-%20Mental%20Health%20Summit-%20Final%20Report.pdf.

standardized, integrated, statewide program for screening, assessment and treatment of all youth" for mental health issues because "research-based treatment programs can reduce recidivism and future involvement in the juvenile justice system by 25 to 80 percent." Indiana State Bar Ass'n, supra note 3, at 3–4. Second, "[a]ny program of screening, assessment and treatment of youth entering the juvenile justice system must include protections so that the information is not used to prove their guilt," id. at 4–5—because "[w]ithout open and honest communications between" treatment providers and patients, "the rehabilitative process will fail." Daymude v. State, 540 N.E.2d 1263, 1267 (Ind. Ct. App. 1989), trans. denied. In addition, the Indiana Juvenile Mental Health Screening, Assessment and Treatment Project ("the Project") grew from the Summit, and it implemented routine screening and treatment of mental health disorders in numerous counties, including Elkhart County, where this case originated. Matthew C. Aalsma & the Indiana Juvenile Mental Health Screening, Assessment & Treatment Project, 2011 Report and Recommendations 1, 4 (2011), available at http://www.inbar.org/Portals/0/downloads/legal%20news/2011-Report-Recommendations.pdf.

But the viability of those efforts depended on addressing the self-incrimination issue. To that end, members of the Project and the Indiana State Bar Association advocated for a law "that prevents the use of information obtained through screening, assessment or treatment in the juvenile justice system from being used for purposes of guilt in adjudication proceedings." Hanger, supra, at 38. And in response, the Legislature passed the Juvenile Mental Health Statute, which took effect on July 1, 2007. I.C. § 31-32-2-2.5, Act of May 2, 2007, P.L. 120-2007, §§ 3–4, 2007 Ind. Acts 1839–40.[4] Without the Statute's protections, the "potential for self-incrimination" would have a "deleterious effect, namely the deterrence of youth from consenting to" screening or treatment. Aalsma, supra, at 2. The Statute therefore aimed to protect against self-incrimination "so that [systematic] screening contemplated by the Indiana Project could in fact occur." Id.

We therefore feel confident that the Legislature did not intend to permit such derivative use of juveniles' statements in therapy. Indiana Code section 31-33-5-1 (2008) required I.T.'s therapist to report his disclosures to DCS, and Indiana code section 31-33-8-1(a) (2008) required DCS to

---

[4] This bill was codified at Indiana Code section 31-37-8-4.5 and Indiana Code section 31-32-2-2.5. The two sections contain virtually identical language, but the former protects a juvenile during an investigation or preliminary inquiry, while the latter (the one that applies in this case) protects a juvenile subject to a juvenile court's jurisdiction. Our interpretation applies equally to both statutes.

investigate the report—both of which are consistent with the juvenile code's goals. And so are the Statute's exceptions permitting the statements to be used for revoking probation, modifying the dispositional decree, or other matters besides delinquency. I.C. § 31-32-2-2.5(b)–(c). Because probation "is a matter of grace and a conditional liberty that is a favor, not a right," Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999) (internal quotation marks omitted), "probationers do not receive the same constitutional rights that defendants receive at trial," and courts have discretion to establish conditions for probation. Reyes v. State, 868 N.E.2d 438, 440 (Ind. 2007). Similarly, modifying disposition merely adjusts the rehabilitative services ordered in connection with a delinquency determination that has already been made. In either case, the juvenile's statement is used only to better tailor services to their particular needs, and thus to promote their rehabilitation. Each of those uses is for an issue other than determining delinquency, just as the statute expressly provides.

By contrast, using the evidence *derived from* I.T.'s statements against him to prove his delinquency is still in effect using the statement for the prohibited purpose of determining "whether the child committed a delinquent act or crime." I.C. § 31-32-2-2.5(b). Moreover, it would defeat the larger purpose of the Statute. Failing to prohibit derivative use would mean that I.T. and other juvenile offenders would be discouraged from participating openly in treatment to reduce their likelihood of reoffending. Also, by participating in treatment, the juvenile may reveal previously unknown victims, and the reporting requirements enable the victims to receive treatment as well. Without derivative use immunity, then, juvenile offenders would be deterred from participating in treatment—increasing recidivism while decreasing identification and treatment of victims. We find it highly unlikely that the Legislature meant to create such a backwards incentive, which would not only disserve the Statute's purpose, but raise a significant question of its constitutionality. We will therefore construe the Statute to provide both use and derivative use immunity as a safe harbor against jeopardizing its constitutionality.

### III. A Juvenile's Compelled Statements May Not Be Used Against Him—Even in a Probable-Cause Affidavit.

Because the Statute must be construed to provide use and derivative use immunity, the trial court reached the correct result. As discussed in Part I, when the State files a delinquency petition, the trial court must determine whether it is in the child's best interests before the case may proceed—unlike criminal charging informations or indictments, which require no such threshold inquiry. Thus, facts recited in the probable cause affidavit are necessarily "admitted as evidence

against the child on the issue of whether the child committed a delinquent act or crime," as part of the trial court's best-interests determination. But here, the majority of the evidence in the probable-cause affidavit was precisely what even a narrow view of the Statute forbids—I.T.'s statements during court-ordered therapy. And the State concedes that the remainder of the allegations are entirely derived from those statements. In each respect, I.T.'s statements made during court-compelled therapy were improperly used against him.

Our conclusion that the probable cause affidavit violates the Juvenile Mental Health Statute does not leave the State without recourse, nor does it relieve a juvenile from consequences based on disclosures during court-ordered treatment. The Statute provides that the State may use a juvenile's statements in treatment to revoke or modify probation. I.C. § 31-32-2-2.5(b). Moreover, the juvenile's statements may be used for purposes other than proving delinquency, such as at a CHINS hearing, at an expungement hearing, or at a Sex-Offender Registry hearing. See T.W., 953 N.E.2d at 1124–25 (finding that a juvenile's statements in treatment could be used for other purposes, such as requiring a juvenile to register as a sex offender). And the Juvenile Mental Health Statute does not prevent the State from introducing evidence of a juvenile's delinquency, if it can "affirmative[ly] . . . prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." Kastigar, 406 U.S. at 460.

Here, I.T. was removed from his home and placed first in detention, then a residential treatment facility. Further, the trial court gave the State an opportunity to introduce evidence not derived from I.T.'s statements, which it did not do. Indeed, the State concedes it was not pursuing a concurrent-independent investigation at the time of I.T.'s disclosures. Therefore, while the Juvenile Mental Health Statute limits the State's use of a juvenile's statements, it does not prevent the State from ensuring that juveniles face appropriate consequences for their actions.

**Conclusion**

We conclude that the State may appeal a juvenile court order that suppresses evidence, if doing so terminates the proceeding. We also construe the Juvenile Mental Health Statute's limited immunity as prohibiting both use and derivative use of a juvenile's statements to prove delinquency—a safe harbor that honors the Legislature's intent, while avoiding any question of the Statute's constitutionality that would otherwise be implicated. We therefore affirm the trial court.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.