

FILED

Feb 13 2019, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Joel M. Schumm

Riley L. Parr
Certified Legal Intern
Appellate Clinic
Indiana University
McKinney School of Law
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Petitioner,*<br><br>v.<br><br>D.R.,<br>*Appellee-Respondent.* | February 13, 2019<br><br>Court of Appeals Case No.<br>18A-JV-1608<br><br>Appeal from the Vigo Circuit Court<br><br>The Honorable Sarah K. Mullican, Judge<br><br>The Honorable Daniel W. Kelly, Magistrate<br><br>Trial Court Cause No.<br>84C01-1804-JD-417 |

**Sharpnack, Senior Judge.**

# Statement of the Case

The State filed a petition alleging that D.R. is a juvenile delinquent. The State also moved the juvenile court to waive jurisdiction over D.R. and transfer the case to criminal court. The court denied the State's motion. In this discretionary interlocutory appeal, the State asks this Court to determine that the juvenile court should have waived jurisdiction over D.R. D.R. cross-appeals, requesting dismissal of the State's appeal. We deny D.R.'s request to dismiss the appeal and affirm the judgment of the juvenile court.

# Issues

The State raises one issue, which we restate as: whether the juvenile court abused its discretion in denying the State's request to waive juvenile jurisdiction over D.R. On cross-appeal, D.R. argues that the State has no authority to seek discretionary interlocutory review of a juvenile court's refusal to waive jurisdiction over a juvenile.

# Facts and Procedural History

We set forth the facts as alleged in the probable cause affidavit and at the evidentiary hearing on the State's motion to waive jurisdiction, keeping in mind that the juvenile court has not yet held a final hearing on the merits of the State's case. On April 6, 2018, an officer was dispatched to investigate an automobile accident in Vigo County. One of the drivers, Regina Hair, was trapped in her vehicle, unconscious. She died later that day.

[4] Seventeen-year-old D.R., who was standing near his vehicle with another minor, stated that he had also been involved in the accident. He told the officer that he was driving when he crossed the center line and struck Hair's car head-on. A witness at the scene stated that D.R. had passed him on a double-yellow line at a high rate of speed prior to the accident. The witness "suspected" that D.R. had been racing another vehicle that had also passed him. Tr. p. 57.

[5] D.R. had dilated pupils and bloodshot eyes, but a portable breath test showed .000% blood alcohol content. D.R.'s passenger told an officer that D.R. had smoked marijuana earlier that day. Emergency medical personnel transported D.R. to a hospital for treatment. Hospital personnel tested D.R.'s urine and discovered the presence of marijuana. Later in the evening, an assessment worker with the Vigo County Department of Child Services (DCS) performed a drug screen on D.R., and the screen showed 3.3 nanograms of THC in his blood. The DCS employee characterized the result as "low level." *Id.* at 40.

[6] The State took D.R. into custody after he was released from medical care. On April 10, 2018, the State filed a petition alleging D.R. was a delinquent child. The State claimed D.R. had committed acts that, if committed by an adult, would have amounted to the offenses of reckless homicide, a Level 5 felony; and operating a vehicle with a controlled substance or its metabolite in the person's blood resulting in death, a Level 5 felony. The State also filed a motion for waiver of juvenile court jurisdiction. The court determined there was probable cause to detain D.R. D.R., by counsel, requested a psychological evaluation, and the court granted his request.

[7] On May 24, 2018, the juvenile court held a hearing on the State's motion to waive jurisdiction. That same day, the court denied the motion, concluding "the minor has proven by a preponderance of the evidence that waiver of juvenile jurisdiction would not be in the best interests of the minor and the safety and welfare of the community." Appellant's App. Vol. 2, p. 44.

[8] The State filed a motion to correct error. On June 6, 2018, the juvenile court denied the State's motion to correct error, reaffirming that "the presumption in favor of waiver has been overcome." *Id.* at 55. The court later ordered D.R. to be placed in a residential treatment facility pending disposition of the case and, at D.R.'s request, further ordered that he be enrolled in a high school equivalency program while at the facility.

[9] Next, the State filed a motion to certify orders for interlocutory appeal. The juvenile court granted the motion, and the State asked this Court to accept jurisdiction over the appeal. On August 3, 2018, this Court's motions panel accepted the appeal.

# Discussion and Decision

## I. Cross-Appeal - Appellate Jurisdiction

[10] We first address D.R.'s cross-appeal claim. D.R. argues that the State lacks the authority to seek interlocutory review of the juvenile court's denial of a motion to waive jurisdiction. Whether the State may appeal the court's order is a question of law. *State v. I.T.*, 4 N.E.3d 1139, 1142 (Ind. 2014). We review the court's decision de novo. *Id.*

[11]    It is well established that the State may appeal only when authorized by statute. *Id.* Indiana Code section 35-38-4-2 (2015) governs the State's right to appeal in criminal cases. In *State v. I.T.*, the Indiana Supreme Court applied that statute to a juvenile proceeding. 4 N.E.3d at 1142. We will do the same, keeping in mind that the State's statutory right of appeal contravenes common law principles and must be strictly construed. *State v. Holland*, 273 Ind. 284, 286, 403 N.E.2d 832, 833 (1980). At the same time, when a statute is unambiguous we merely apply its plain language, and we will not "expand or contract" the meaning of a statute by adding language that the legislature did not provide. *Grody v. State*, 257 Ind. 651, 659, 278 N.E.2d 280, 285 (1972).

[12]    Indiana Code section 35-38-4-2 provides:

> Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:
>
> (1) From an order granting a motion to dismiss one (1) or more counts of an indictment or information.
>
> (2) From an order or judgment for the defendant, upon the defendant's motion for discharge because of delay of the defendant's trial not caused by the defendant's act, or upon the defendant's plea of former jeopardy, presented and ruled upon prior to trial.
>
> (3) From an order granting a motion to correct errors.
>
> (4) Upon a question reserved by the state, if the defendant is acquitted.

(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment.

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) the remedy by appeal after judgment is otherwise inadequate.[1]

[13]    Indiana Code section 35-38-4-2(6) does not place any limits on the types of trial court orders that may be appealed. We should not read restrictions into the statute where none are explicitly stated.[2]

[14]    Further, we note that if the State may not seek interlocutory review of a juvenile court's decision to deny waiver of jurisdiction, then such a denial may be

---

[1] The legislature added subsection (6) in 1983. Prior to that, the State could not take interlocutory appeals pursuant to the Indiana Rules of Appellate Procedure and had no statutory authority to take an interlocutory appeal. *State v. Peters*, 637 N.E.2d 145, 147 (Ind. Ct. App. 1994).

[2] The State claims this Court's decision in *State v. C.K.*, 70 N.E.3d 900 (Ind. Ct. App. 2017), *trans. denied*, authorizes the current appeal. We disagree because that case is procedurally distinct from D.R.'s case. In *C.K.*, the juvenile did not question the State's authority to appeal a juvenile court's refusal to waive jurisdiction over a juvenile.

effectively foreclosed from appellate review. Indiana Code section 35-38-4-2(4) allows the State to appeal reserved questions of law after an acquittal. Even so, as D.R. notes, if a juvenile court declines to waive jurisdiction and later issues a final judgment on the delinquency petition, the State may be barred by double jeopardy principles from trying the juvenile in adult court even if an appellate court should later determine the juvenile court erred in declining to waive jurisdiction. Appellee/Cross-Appellant's Br. p. 14 n.3. The State's right to appeal is strictly limited, but we are reluctant to conclude that a juvenile court's decision to deny waiver may never be subjected to appellate review when the plain language of Indiana Code section 35-38-4-2(6) appears to allow such appeals. For these reasons, we conclude the State may seek discretionary interlocutory review of a juvenile court's denial of the State's motion to waive jurisdiction.

[15] D.R. also argues the State should not be allowed to appeal a juvenile court's denial of waiver because such an appeal would conflict with mandatory juvenile court deadlines. D.R. cites Indiana Code section 31-37-11-3 (1997), which provides: "If waiver is denied, the factfinding hearing must be commenced not later than ten (10) days, excluding Saturdays, Sundays, and legal holidays, after the denial."

[16] We disagree with D.R.'s argument that Section 31-37-11-3 bars an appeal under Section 35-38-4-2(6) in this context. Where two or more statutes contradict each other or are in apparent conflict, we attempt to construe them in a manner which reasonably brings them into harmony. *Purcell v. State*, 721 N.E.2d 220,

223 (Ind. 1999). The General Assembly has explained the consequences when the State or a juvenile court fails to comply with Section 31-37-11-3's ten-day deadline: "the child shall be released on the child's own recognizance or to the child's parents, guardian, or custodian." Ind. Code § 31-37-11-7 (1997). Section 31-37-11-7 does not require dismissal of the petition. The statute is thus analogous to Indiana Criminal Rule 4(A), which requires a defendant to be released on his or her own recognizance if not brought to trial within six months of the date a charge is filed, if the delay is not caused by the defendant.

As a result, we read Sections 31-37-11-3 and 35-38-4-2(6) as follows: the State may seek interlocutory review of a juvenile court's denial of a motion to waive jurisdiction, but the juvenile shall be released from custody pursuant to Indiana Code section 31-37-11-7 during the appeal if the ten-day limit is exceeded. We deny D.R.'s request to dismiss the State's appeal, and we turn to the merits of the State's claims.

## II. Juvenile Court's Judgment

The State argues the juvenile court should have waived jurisdiction over D.R. and transferred him to criminal court because waiver was necessary for "the safety of the community." Appellant's Br. p. 12. Under the facts of this case, waiver of juvenile jurisdiction is governed by Indiana Code section 31-30-3-5 (2014). That statute provides, in relevant part:

> [The juvenile] court shall, upon motion of the prosecuting attorney and after full investigation and hearing, waive jurisdiction if it finds that:

(1) the child is charged with an act that, if committed by an adult, would be:

(A) a Level 1 felony, Level 2 felony, Level 3 felony, or Level 4 felony, except a felony defined by IC 35-48-4;

(B) involuntary manslaughter as a Level 5 felony under IC 35-42-1-4; or

(C) reckless homicide as a Level 5 felony under IC 35-42-1-5;

(2) there is probable cause to believe that the child has committed the act; and

(3) the child was at least sixteen (16) years of age when the act charged was allegedly committed;

unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.

*Id.*

[19] During proceedings in the juvenile court, D.R. did not dispute that the State alleged he committed an act that, if committed by an adult, would be reckless homicide. He further conceded the State demonstrated probable cause to believe he committed the act and that he was at least sixteen years of age at the time of the alleged act. Proof of these elements creates a presumption in favor of waiver. *Moore v. State*, 723 N.E.2d 442, 446 (Ind. Ct. App. 2000). The

juvenile court determined D.R. had presented evidence that rebutted the presumption.

[20] We review a juvenile court's decision on waiver of jurisdiction for an abuse of discretion. *Vance v. State*, 640 N.E.2d 51, 57 (Ind. 1994). An abuse of discretion occurs when a decision is "'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) (quoting *In re L.J.M.*, 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)). We will not weigh the evidence nor judge the credibility of witnesses, "considering both the record of the waiver hearing" and the reasons stated by the juvenile court. *Goad v. State*, 516 N.E.2d 26, 27 (Ind. 1987). It is for the juvenile court judge, after weighing the effects of retaining or waiving jurisdiction, to determine which is the more desirable alternative. *Vance*, 640 N.E.2d at 57.

[21] In the waiver proceeding, the State as the proponent of waiver had the ultimate burden to prove waiver was appropriate. The denial of waiver by the juvenile court is, in effect, a negative judgment. As such, the State, must show us that the court's decision was contrary to law, that there was no evidence to support the denial of waiver, and that all evidence and circumstances pointed to a grant of waiver. *See State v. Rucker*, 861 N.E.2d 1240, 1241 (Ind. Ct. App. 2007) (applying the negative judgment standard to the State's appeal of a grant of a motion to suppress evidence) *trans. denied*.

[22]   When D.R. was eight, DCS removed him from his mother's care and placed him with his paternal grandparents. DCS had substantiated allegations of neglect against D.R.'s parents. In addition, D.R. alleged he had been molested by a cousin at the age of eight. It is unclear whether the molestation allegation was part of the DCS investigation, but D.R. talked about it with Dr. Bridget Roberts-Pittman, a psychologist who performed D.R.'s court-ordered assessment in the current case.

[23]   D.R. also explained that he had witnessed his mother being beaten by her boyfriend when he was younger, to the point that she needed emergency hospitalization for head trauma. In addition, D.R. was treated for mental illness in 2009, 2010, and 2013. D.R. first smoked marijuana in the sixth grade, and by the ninth grade he smoked it regularly.

[24]   After D.R.'s grandmother died, he had few housing options. After turning fifteen, D.R. lived in a car for a period of time, and he lived with different family friends. Both of D.R.'s parents failed to remain involved in his life and had criminal records, including drug-related offenses. After D.R. was arrested, he explained he had not been in regular contact with either parent. D.R. had dropped out of high school in the eleventh grade.

[25]   The neglect of D.R. during his childhood left its mark. Dr. Roberts-Pittman diagnosed D.R. as having dysthymia, a mood disorder "evidenced by low-grade, chronic depression." Tr. p. 20. She further determined D.R. had "cannabis use disorder" and met some of the criteria for posttraumatic stress

disorder. *Id.* In addition, a week prior to the incident at issue, D.R. reportedly attempted to commit suicide and, after a brief hospital stay, was transferred to an inpatient mental health center for four days. Dr. Roberts-Pittman noted that D.R. had no behavior disorders, which is unusual for an alleged juvenile delinquent.

[26] Despite these challenges, D.R. had made positive strides in his life. He reported to Dr. Roberts-Pittman that he had two jobs and had begun working on his GED before the incident at issue. He planned to attend community college after getting his GED. Furthermore, D.R. had no juvenile history. A DCS caseworker described D.R. as "motivated" to improve his life. Tr. p. 33.

[27] Dr. Roberts-Pittman concluded the most appropriate treatment for D.R.'s dysthymia and cannabis use disorder would be "intensive individual therapy," *Id.* at 21. For that reason, she recommended a placement outside of the home. Dr. Roberts-Pittman further noted D.R. was thoughtful and "regretful" during his mental health assessment, Tr. p. 30, and was working on his GED. She arranged for D.R. to see a counselor, which is the first time she had done so for a juvenile in detention. She further recommended that he be placed in a setting where he could continue educational pursuits because he had the skills to complete his high school education. Dr. Roberts-Pittman also recommended that D.R. remain in juvenile court, noting that she had encountered very few juveniles who displayed his "thoughtfulness." *Id.* at 16.

[28] The juvenile court heard testimony about the nature of the alternatives D.R. could face and their possible impacts. Public Defender Michael Brewer, a witness for D.R., explained that if the juvenile court waived jurisdiction over D.R., he would face felony criminal charges but would not serve a long sentence. D.R. could receive mental health services, but he might have to pay for a portion of his care, and the supervision would not be as intensive as in juvenile court. Brewer further explained that several of his clients had been waived to adult court and, after being convicted of felonies, had difficulty getting jobs and becoming productive members of society. By contrast, if D.R. remained in the juvenile system and was placed on probation, he could be sent to a residential treatment center at no cost to him and, further, could be kept on probation until age twenty-one to monitor him.

[29] The State claims D.R. is "a danger to himself and to the safety of the community." Appellant's Br. p. 12. The State also repeatedly characterizes D.R. as a "drug dealer" because he admitted during his mental health assessment that he had sold marijuana in the ninth grade. *Id.* There is no evidence as to how often and for how long he had sold marijuana, and there is no indication that he was dealing in marijuana at the time of the incident at issue here. On the other hand, there was evidence that if D.R. remained under the juvenile court's jurisdiction, he would be provided with services and an opportunity to rehabilitate himself more effectively than in adult court. Under these circumstances, including D.R.'s complete lack of a juvenile record and his attempts to overcome an unstable and traumatic childhood, the trial court's

determination that D.R. overcame the presumption of waiver is not against the facts and circumstances of this case. The juvenile court can effectively address the deeply serious allegations against D.R.

# Conclusion

[30] For the reasons stated above, we affirm the judgment of the trial court.

[31] Affirmed.

[32] Baker, J., and Pyle, J., concur.