## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 06 2020, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Shannon Mears
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.P.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 6, 2020<br><br>Court of Appeals Case No.<br>19A-JV-1484<br><br>Appeal from the<br>Hendricks Superior Court<br><br>The Honorable<br>Karen M. Love, Judge<br><br>Trial Court Cause No.<br>32D03-1903-JD-27 |

**Vaidik, Judge.**

# Case Summary

In this interlocutory appeal, K.P., who was seventeen years old when he burglarized an unoccupied house while armed with a BB gun, argues that the juvenile court abused its discretion in waiving him to adult court. Because, among other things, this was K.P.'s first referral to the juvenile-justice system, K.P. quickly turned himself in after a video of the burglary surfaced and cooperated with the police, and his seventeen-year-old accomplice was not waived to adult court, we find that it is not in the best interests of K.P. and the safety and welfare of the community for him to become a convicted felon on his first offense without ever having received the benefit of services offered through the juvenile-justice system. We therefore reverse the juvenile court.

# Facts and Procedural History

K.P., who was born in Indianapolis in March 2001, is the second oldest of five siblings. K.P. has a different father than his siblings and is the only one who does not know who his father is. In 2012, K.P.'s maternal grandmother, a school administrator, became guardian of K.P. and his siblings because K.P.'s mother was struggling with alcoholism. They lived in Fisher, Illinois, which is a "small rural town," and K.P. attended Fisher High School, which has an enrollment of 190 students. Tr. p. 47. K.P. excelled in sports at Fisher High School, playing football, basketball, and baseball, and everyone in the community knew who K.P. was. While living in Fisher, K.P. never got into any trouble, except for one fight in elementary school.

[2]     In June 2018, after K.P.'s sophomore year of high school, K.P.'s family moved to Indianapolis, and K.P. was enrolled in Ben Davis High School, one of the largest high schools in Indiana. K.P.'s grandmother became the assistant principal at Indianapolis Metropolitan High School. From the beginning, K.P. struggled getting acclimated to Ben Davis. He had to tryout for the football team, which he never had to do before. When K.P. only made the practice squad, he quit.

[3]     In early March 2019, K.P.'s grandmother took him to a crisis center for an initial assessment due to his continued struggles getting acclimated and suicidal thoughts. A follow-up appointment was scheduled for March 14.

[4]     In the meantime, on the evening of Thursday, March 7, 2019—less than two weeks before K.P.'s eighteenth birthday—K.P. and two of his classmates, seventeen-year-old A.H. and eighteen-year-old Brandon Kapangama, were looking for a way to get money to pay off a marijuana debt and to buy more marijuana. The trio decided to purchase two BB guns, which looked like a Glock, and to burglarize a home. They selected a house in an Avon neighborhood that was dark inside. One of the boys rang the doorbell, and no one answered. Believing that no one was home, K.P. and A.H. used a pry bar to open a window and then entered the house while Kapangama served as lookout. The homeowner had a security camera inside, which showed K.P. walking through the house carrying a BB gun. Ex. 1. K.P. and A.H. took a 70-inch television and about $2,500 in cash. The homeowner's security system alerted him that people were inside his house, and he alerted the Avon Police

Department. By the time the police arrived, the boys were gone. The homeowner gave the police the video from his security camera. Having no leads, the police released the video to the public through Crime Stoppers on Saturday, March 9.

[5] The next day, K.P.'s grandmother saw the video online. She recognized K.P. from his mannerisms and confronted him about it. K.P. admitted that it was him on the video. K.P.'s grandmother then called the Avon Police Department and told them that K.P. wanted to turn himself in. K.P. and his grandmother went to the police station. K.P. waived his rights and admitted his involvement in the burglary. He also identified A.H. and Kapangama and told the police where they could find the BB guns. According to the police, K.P. was "very cooperative" and "[v]ery kind." Tr. p. 29.

[6] On Monday, March 11, the State filed a delinquency petition alleging that K.P. committed acts that would be Level 2 felony burglary (armed with a deadly weapon), Level 6 felony theft, and Class A misdemeanor carrying a handgun without a license if committed by an adult. The State also filed a delinquency petition against A.H. (who is four months younger than K.P.), alleging that he committed acts that would be Level 2 felony burglary (armed with a deadly weapon) and Level 6 felony theft if committed by an adult. In each case, the State filed a motion to waive jurisdiction to adult court pursuant to Indiana

Code section 31-30-3-5. The trial court denied the motion as to A.H.[1] As for K.P., a hearing was held on Friday, March 15, three days before his eighteenth birthday.

[7] K.P.'s grandmother testified at the waiver hearing. In addition, K.P. presented numerous letters on his behalf, including from his football coach (who was also an administrator) at Fisher High School, his chemistry teacher at Ben Davis, and his television-broadcasting teacher at Ben Davis. All the letters recognized the seriousness of what K.P. had done but implored the court to give K.P. a second chance. Exs. C, D, & E.

[8] The juvenile court granted the waiver, finding in part:

> (31) The video of the burglary clearly shows youth armed with a gun. BB guns can inflict serious bodily injury (loss of eye, loss of hearing, etc.). BB guns that appear to be a real firearm also may cause others to respond in seconds with tragic consequences.
>
> People have need to be safe in their own homes. When an intruder enters a home holding a gun like those depicted in Exhibits 7 and 8, someone in the home could respond by using a firearm to shoot the intruder.
>
> If the police officers responding to the 911 call of burglary in progress had caught youth while he was armed with one of the

---

[1] A.H. later admitted to Level 4 felony burglary as a lesser-included offense, and the State dismissed the theft count. The court ordered a suspended commitment to the Indiana Department of Correction and placed A.H. on juvenile probation for twelve months.

guns identified in Exhibits 7 or 8 and youth made any furtive movement, youth may have been shot by the police.

(32) The alternatives available in the juvenile court system are inadequate to protect the safety and welfare of the community. It is in the best interests of the safety and welfare of the community that youth be waived to the adult court system.

Appellant's App. Vol. II p. 49. The court later certified its order for interlocutory appeal. We accepted jurisdiction.

# Discussion and Decision

The State sought waiver to adult court pursuant to Indiana Code section 31-30-3-5, which provides, in relevant part:

> [The juvenile] court shall, upon motion of the prosecuting attorney and after full investigation and hearing, waive jurisdiction if it finds that:
>
> (1) the child is charged with an act that, if committed by an adult, would be:
>
>> (A) a Level 1 felony, Level 2 felony, Level 3 felony, or Level 4 felony, except a felony defined by IC 35-48-4;
>>
>> (B) involuntary manslaughter as a Level 5 felony under IC 35-42-1-4; or
>>
>> (C) reckless homicide as a Level 5 felony under IC 35-42-1-5;

(2) there is probable cause to believe that the child has committed the act; and

(3) the child was at least sixteen (16) years of age when the act charged was allegedly committed;

**unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.**

(Emphasis added).

[10] We review a juvenile court's decision to waive its jurisdiction for an abuse of discretion. *Moore v. State*, 723 N.E.2d 442, 445 (Ind. Ct. App. 2000). Proof of the three elements outlined in Section 31-30-3-5 creates a presumption in favor of waiver. *State v. D.R.*, 119 N.E.3d 1060, 1065 (Ind. Ct. App. 2019), *reh'g denied*, *trans. denied*. The burden then shifts to the juvenile to present evidence and prove that it is in the best interests of him and the safety and welfare of the community for him to remain in the juvenile-justice system. *Moore*, 723 N.E.2d at 446.

[11] K.P. argues that the juvenile court abused its discretion in finding that he did not rebut the presumption of waiver. We agree. This was K.P.'s first referral to the juvenile-justice system. K.P. had never been in any trouble before, besides getting into one fight in elementary school. By all accounts, K.P. was doing well until he moved from a small town and school in Illinois to a large city and school in Indiana. The troubles started when K.P., a star athlete at Fisher High School, did not make the football team at Ben Davis High School. His

grandmother, a high-school assistant principal, noted that K.P. was having troubles getting acclimated and took him to a crisis center for an initial assessment; unfortunately, the incident in this case occurred shortly before K.P.'s follow-up appointment. Although K.P. burglarized a house while armed with a BB gun, he and A.H. only made entry after they rang the doorbell and no one answered. When K.P.'s grandmother saw the video of the burglary online, she confronted K.P. about it, and he admitted that it was him on the video. K.P.'s grandmother then called the police and told them that K.P. wanted to turn himself in. At the police station, K.P. admitted his involvement in the burglary and identified A.H. and Kapangama. According to the police, K.P. was "very cooperative" and "[v]ery kind." The actions of K.P.'s grandmother as well as K.P.'s willingness to take responsibility for his actions and cooperation with the police show that he is a not a lost cause and would respond positively to services offered through the juvenile-justice system. Indeed, several teachers submitted letters attesting to K.P.'s character and how he was deserving of a second chance. Ex. C (stating that this was "a pivotal moment" in K.P.'s life); Ex. D (believing that the adult criminal system would "destroy any chance [K.P.] has to make it in this world"); Ex. E (noting that the court's decision would have "a profound effect on the rest of [K.P.'s] life").

[12] We acknowledge the seriousness of K.P.'s actions in burglarizing an unoccupied home while armed with a BB gun and the limited options that the juvenile court may have had given K.P.'s impending eighteenth birthday. But given the other circumstances in this case—including K.P.'s willingness to take

responsibility for his actions and cooperation with the police and that A.H., who is only four months younger than K.P., was not waived to adult court and received juvenile probation—it is not in the best interests of K.P. and the safety and welfare of the community for him to become a convicted felon on his first offense without ever having received the benefit of services offered through the juvenile-justice system. We therefore reverse the juvenile court.[2]

[13] Reversed.

Najam, J., and Tavitas, J., concur.

---

[2] In light of this result, we do not address K.P.'s alternate argument that a BB gun is not a deadly weapon and therefore there is no probable cause to believe that he committed a Level 2 felony.